UNITED STATES of America, Appellee,

v.

**Frank GANGI, Defendant–Appellant.**

**No. 250, Docket No. 94–1092.**

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1994.

Decided Jan. 10, 1995.

Mark B. Gombiner, New York City, The Legal Aid Soc., Federal Defender Div., Appeals Bureau, for defendant-appellant.

Mark S. Cohen, Brooklyn, NY, Asst. U.S. Atty., E.D.N.Y. (Zachary W. Carter, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before: FEINBERG, KEARSE and PRATT, Circuit Judges.

FEINBERG, Circuit Judge:

Frank Gangi appeals from a January 1994 order of the United States District Court for the Eastern District of New York, Reena Raggi, J., denying the motion of the United States under Fed.R.Crim.P. 35(b) for reduction of Gangi's sentence in light of post-sentencing cooperation. The question on appeal is whether a district court may deny a Rule 35(b) motion without affording the defendant an opportunity to be heard. We hold that it may not, for reasons given below. We vacate the judgment of the district court and remand with instructions to give Gangi an opportunity to respond to the government's motion and to consider Gangi's response in deciding the motion anew.

## I. Facts and prior proceedings

This case grows out of the arrest of Frank Gangi in April 1990 for a traffic code violation. After his arrest, Gangi offered his cooperation in the unrelated investigation and prosecution of criminal activity by members of the Pitera "crew" of an organized crime family. See *United States v. Pitera*, 5 F.3d 624 (2d Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994). Gangi confessed to a host of serious crimes, including participation in five murders, and eventually pled guilty to one RICO count and one count of conspiracy to distribute cocaine, thus exposing himself to a possible life sentence. Between Gangi's arrest in April 1990 and his sentencing almost three years later, he provided the government with a wealth of information pertaining to organized crime in New York. Among other things, Gangi testified extensively at the trials of Thomas Pitera, head of the crime crew, and Vincent Giattino, a hit man who worked for Pitera. Both defendants received life sentences.

At Gangi's sentencing in February 1993, the prosecutor acknowledged the extraordinary assistance Gangi had provided, leading to multiple convictions and guilty pleas. Judge Raggi, who had presided over the Pitera convictions, stated at sentencing: "I view your cooperation as extraordinary, more than any other person who's ever appeared before me."

The court downwardly departed from the life sentence Gangi faced, and sentenced him to a 10–year prison term, five years of supervised release and a $100 special assessment. At the end of the sentencing hearing, Judge Raggi stated:

> I think that I have given Mr. Gangi a sentence that recognizes his full and complete cooperation, on the other hand, I do not wish to preclude the government from bringing anything else to my attention in the course of the one year period, if there [is] more, I'm not saying it would have an effect, but I'm not foreclosing it either.

Gangi did indeed continue to cooperate after sentencing. Accordingly, on January 31, 1994, almost a year later, the government submitted to the court (and served on Gangi's counsel) a motion in letter form under Rule 35(b) urging a reduction in sentence. On the same day that the government submitted its motion—before Gangi was even

aware that the motion had been made—the district court denied it in a statement handwritten on the motion. The court found that "[Gangi's] own criminal conduct was too serious to permit a sentence of less than ten years."

Gangi appeals from that decision.

## II. Discussion

■ Gangi argues to us that by summarily dismissing the government's motion without giving him an opportunity to be heard, the district court violated Rule 35(b), denied him due process and abused its discretion.

The government replies that the plain language of Rule 35(b) does not entitle Gangi to a hearing or even to notice of the motion. The government also urges this court to view the government's Rule 35(b) motion as the last step in a sentencing continuum. Viewed in that light, the government argues, Gangi's opportunity to be heard at his sentencing hearing in February 1993 satisfies the requirements of due process. The government's motion almost a year later simply supplemented the evidence adduced at the sentencing hearing. Finally, the government argues that denial of a Rule 35(b) motion is a discretionary decision not reviewable by this court.

### A. Requirements of Rule 35(b)

Rule 35(b) states, in relevant part:

The court, on motion of the Government made within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

The Rule provides the only avenue for reduction of a legally imposed federal prison sentence. As amended in 1987, the Rule permits only the government to move for a reduction of sentence and only on the basis of "a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an of-

fense." Furthermore, the government must make its motion within one year of the imposition of sentence, unless "the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence."

In this case, the government submitted its Rule 35(b) motion within the one-year time limit, but it requested the court to hold the motion in abeyance, pending the conclusion of Gangi's cooperation. The government stated that it would submit a supplemental letter at that time. However, as indicated above, the district court summarily denied the motion.

The language of the Rule is, not surprisingly, almost identical to the language of its pre-sentencing counterpart, § 5K1.1 of the Sentencing Guidelines. That section permits a sentencing court to depart below the relevant guideline range to reflect a defendant's substantial assistance to the government in the prosecution and conviction of other defendants. As is the case with Rule 35(b), only a motion of the government will trigger a reduction under § 5K1.1. Also, under both provisions "substantial assistance" is the only basis for leniency. The only practical difference between Rule 35(b) and U.S.S.G. § 5K1.1 is a matter of timing: The latter is based on substantial assistance before sentencing while the former is based on substantial assistance after sentencing. See *United States v. Howard*, 902 F.2d 894, 896 (11th Cir.1990).

■ Because Rule 35(b) and § 5K1.1 are similar in language and in function, Gangi urges us to interpret the procedural requirements of Rule 35(b) consistently with the procedural requirements established for § 5K1.1. Such an interpretation is supported by the instruction in Rule 35(b) that post-sentencing reduction decisions shall be made "in accordance with the guidelines and policy statements issued by the Sentencing Commission." At least two other circuit courts have explicitly recognized that Rule 35(b) should be interpreted in light of § 5K1.1. *United States v. Perez*, 955 F.2d 34, 35 (10th Cir.1992); *United States v. Doe*, 940 F.2d 199, 203 n. 7 (7th Cir.), cert. denied,

502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991). We are persuaded that, due to similarity of language and function, § 5K1.1 should inform our construction of Rule 35(b).

It is common practice for a defendant to be served with the government's § 5K1.1 motion and to have an opportunity to comment. While it is true that this usually occurs within the wider context of the sentencing proceeding, in which factors other than cooperation are before the court, this merely points up the defendant's obvious interest in having his views heard at this critical juncture in the proceeding.

Section 5K1.1 instructs a court considering a downward departure to examine the following five factors: 1) the usefulness of the defendant's assistance; 2) the truthfulness, completeness and reliability of his information; 3) the nature and extent of his assistance; 4) the impact of assistance on the defendant and his family; and 5) the timeliness of the defendant's assistance. Each of these factors is potentially open to a different interpretation by the defendant and by the government. While the government in making a § 5K1.1 motion is effectively rewarding the defendant for his assistance and might be expected to describe that assistance in the light most favorable to the defendant, the defendant may well view the government's description as not fully conveying the compelling nature of his cooperation.

In particular, a defendant may have a better sense than the government of the impact that assistance has had on him and on his family. In *United States v. Agu*, 949 F.2d 63, 66 (2d Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992), the defendant made a somewhat similar point, stating that cooperation with the government should be a ground for departure due not only to the "intrinsic worth" of the cooperation but also to the implications of cooperation for the "moral worthiness" of the defendant. *Id.* at 66. The *Agu* defendant made this argument in urging the court to reject the requirement that the government make a motion in order for the sentencing court to depart under § 5K1.1. We rejected Agu's argument, noting that "the Commission has given consideration to cooperation *from the defendant's perspective* by making 'risk of injury to the defendant or his family resulting from his assistance' relevant to the extent of a section 5K1.1 departure." *Id.* at 66 (quoting U.S.S.G. § 5K1.1(a)(4)) (emphasis supplied). Although the court in *Agu* did not address the extent to which a defendant's perspective must be taken into account where the government has made a § 5K1.1 (or Rule 35(b)) motion, it clearly assumed that the defendant's perspective would be taken into account to some degree where there is such a motion. Therefore, notwithstanding the high level of deference afforded a district court's sentencing determinations, the exercise of discretion requires that the court give the real party in interest an opportunity to be heard. A defendant must have an opportunity to respond to the government's characterization of his cooperation in a § 5K1.1 motion.

In a slightly different, though related, context the Supreme Court has held that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive." *Wade v. United States,* —— U.S. ——, ———— ———, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). In order to demonstrate an unconstitutional motive, the defendant must be able to address the lack of a motion by the government. Thus, while the Court in *Wade* concluded that there was no unconstitutional motive in the government's withholding of a § 5K1.1 motion, it observed that "[t]he District Court expressly invited Wade's lawyer to state for the record what evidence he would introduce to support his position if the court were to conduct a hearing on the issue." *Id.* at ——, 112 S.Ct. at 1844. The Court based its conclusion on the inadequacy of the response of Wade's lawyer to that invitation.

It seems to us that just as a defendant may comment on the government's refusal to move under § 5K1.1, a defendant should be able to comment on the inadequacy of the government's motion under that section or under Rule 35(b). Otherwise, the government could circumvent the constitutional limits on its discretion to make or withhold a

§ 5K1.1 or Rule 35(b) motion. The government might make a motion, but for improper reasons underrepresent the extent of a defendant's cooperation. While we certainly do not suggest that this is what happened here, *Wade* supports the view that a defendant must have an opportunity to reply to a government motion under Rule 35(b).

The government glosses over the district court's denying Gangi an opportunity to be heard by inviting us to view the Rule 35(b) motion as the last step in a sentencing continuum in which Gangi has had ample opportunity to be heard. Thus, the government states that "by the time a Rule 35(b) motion is filed, a defendant has already received the process that is due to him in sentencing under general due process principles...." We decline to adopt this view of Rule 35(b).

The Rule 35(b) motion here concerned events that had not yet occurred at the time of the sentencing hearing in February 1993. Obviously, Gangi did not have an opportunity to be heard at that time as to those events. Whether disposition of a Rule 35(b) motion is considered to be a finalization of the sentence, see *United States v. Chavarria–Herrera*, 15 F.3d 1033, 1035–36 (11th Cir.1994), or a new judgment distinct from the sentence, see *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir.1993), fairness requires that a defendant at least be allowed to comment on the government's motion. In this case, the government served its motion on Gangi; if this provision of notice was to be more than an empty gesture, then Gangi must be afforded some opportunity to be heard.

It is true that Rule 35(b) does not specifically require notice to a defendant. But, the potential for the government and the defendant to hold different views of the nature and impact of a defendant's assistance is no less likely after sentencing than before sentencing. For example, in its January 1994 motion, the government did not remind Judge Raggi—as Gangi surely would have—that the judge herself had raised the possibility at Gangi's sentencing a year before of a further reduction of punishment if cooperation continued. Also, as noted above, Gangi was in a better position than the government to assess the impact of cooperation on him and his family.

We therefore hold that a defendant must have an opportunity to respond to the government's characterization of his post-sentencing cooperation and to persuade the court of the merits of a reduction in sentence. While we rest our decision on the requirements of Rule 35, we recognize that failure to afford an opportunity to be heard would raise grave due process issues. Our holding does not mean that the defendant is entitled to a full evidentiary hearing, as distinguished from a written submission. Whether such a hearing is necessary is left to the discretion of the district court.

We acknowledge that it is difficult in a case such as this, where the defendant has received a 10–year sentence for confessed crimes that include participation in five murders, to conceive of any level of cooperation that might lead to a more lenient sentence. There may indeed be a theoretical sentencing floor which no amount of cooperation would cause a district judge to lower. However, even the district court's belief that in view of the defendant's own crimes any further show of leniency is extremely unlikely cannot close the door on a defendant's opportunity to comment on a Rule 35(b) motion. Exercise of discretion still requires that the court give not just the government but also the defendant a chance to present his views.

The government cites several cases from this circuit addressing denials of § 5K1.1 motions in which we stated that a sentencing court's exercise of discretion is not reviewable. In each of these cases, unlike the present case, the prisoner contested either the merits of the court's decision or the failure of the prosecutor to make the requisite motion, rather than the procedure the court followed. E.g., *United States v. Doe*, 996 F.2d 606, 607 (2d Cir.1993) (per curiam); *United States v. Rivera*, 971 F.2d 876, 896 (2d Cir.1992). Here, by contrast, we hold simply that the court cannot exercise its discretion until it has given Gangi an opportunity at least to comment on the government's motion.

### B. Gangi's motion for assignment to a new judge

We decline Gangi's invitation to instruct the chief judge of the district court to assign consideration of the government's Rule 35(b) motion to a new judge. Throughout the sentencing hearing, Judge Raggi made it clear that she understood the full extent of Gangi's cooperation and was doing her best to reconcile with an open mind all of the factors bearing on his sentence. We have no doubt that she will continue to do so.

For the above-stated reasons, we vacate the district court's order and remand this case with instructions to the district court to afford Gangi an opportunity to respond to the government's Rule 35(b) motion before ruling on the motion anew.