**UNITED STATES of America, Plaintiff,**

v.

**Michael MEDJUCK, Defendant.**

**No. CR–91–0552–VRW.**

United States District Court,
N.D. California.

July 8, 2004.

John J. Markham, II, Elizabeth Read, Markham & Read, Douglas R. Schwartz, Schwartz & Cera LLP, San Francisco, CA, for Defendant.

## ORDER

WALKER, District Judge.

Pursuant to F.R.Cr.P. 35(b)(2)(A), the government has moved the court to reduce the sentence originally imposed upon defendant Michael Medjuck, based upon defendant's substantial assistance to authorities in the investigation and prosecution of individuals involved in smuggling and distributing drugs at the Federal Correctional Institution in Pekin, Illinois. Doc. # 1601. The defendant agrees that his sentence should be reduced, but seeks a significantly larger reduction than the government has requested.

For the reasons stated below, the court GRANTS the government's motion (Doc. # 1601) and reduces defendant's sentence to time served.

I

Much of the factual background regarding defendant's crime is thoroughly described in the Ninth Circuit's opinion in *United States v. Medjuck,* 48 F.3d 1107 (9th Cir.1995), and the court need not repeat those facts here. Briefly, defendant. and several others were apprehended by United States authorities while bringing a boatload of hashish from Pakistan to Canada. Def. Resp. (Doc. # 1604) at 9:10–12. Defendant was arrested in September 1991 and has been incarcerated since that date. Id. at 1:3 n. 1, 9:12. Defendant was charged under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 1903, for possession of hashish on the high seas. Defendant was also charged with various other drug crimes under Title 21. Id. at 9:12–21; see also Doc. # 243.

Following a lengthy challenge to the indictment on the grounds that an insufficient nexus existed between the drugs and the United States, defendant was tried and was then convicted only of the MDLEA charges. Def. Resp. at 11:1–13; see also Doc. # 1272. On July 26, 1996, District Judge Eugene F. Lynch employed level 40 of the Sentencing Guidelines to sentence defendant to 292 months in custody, as well as a ten-year supervised release period and a $250,000 fine. Decl. John J. E. Markham (Markham Decl.; Doc. # 1605) at 2 ¶ 9, Exh. 7; see also Doc. # 1317.

The matter was eventually reassigned to the undersigned on July 15, 1997. Doc.

#1436. On April 8, 2004, some thirteen years after defendant was initially taken into custody, the government filed a Rule 35(b) motion to reduce defendant's sentence for substantial assistance, requesting that defendant's prison term be reduced from 292 months to 240 months. Doc. #1601. According to the government's papers, from October 2000 through October 2003, defendant assisted the government in investigating and prosecuting drug smuggling and distribution involving prison personnel in a federal detention facility in Illinois. See Gov't Mot. (Doc. #1601), Exh. A. The government contends that 240 months is the mandatory minimum sentence, taking into account defendant's substantial assistance, and, moreover, that the court has no discretion to order defendant's sentence reduced further without a specific request from the government. On April 27, 2004, defendant filed a response to the government's motion, contending that he is entitled to have his sentence reduced to time served (now roughly 154 months) and to be released immediately. Doc. #1604. The court took oral argument on the motion at a May 27, 2004 hearing.

To resolve the government's motion, the court must examine three issues: (1) whether the court has authority to reduce defendant's sentence below the statutory minimum; (2) whether the statute under which defendant was sentenced carries a statutory minimum; and (3) what level of sentence reduction is warranted.

## II

### A

■ Although the government and the defendant agree that a sentence reduction is warranted, given defendant's substantial assistance, they disagree about the law that governs the court's authority to do this. The government's position is that the court may not reduce a sentence below the statutory minimum unless the government files a separate motion under 18 U.S.C. § 3553(e), while defendant contends that the text of Rule 35(b) gives the court all the authority necessary to make such a departure. For purposes of deciding this issue, the court assumes *arguendo* that the 20–year mandatory minimum suggested by the government is applicable, although, as detailed in section II B below, the court holds that there is no statutory minimum in this case.

■ The court begins with the text of the relevant rules and statutes. As the government points out, 18 U.S.C. § 3553 contains the guidelines the court must follow when imposing a sentence. That statute allows the court to impose a sentence that is less than the statutory minimum to reflect the defendant's substantial assistance in the investigation or prosecution of another individual. See § 3553(e). By the plain language of the statute, however, the court's authority to impose such a sentence is limited to situations in which the government expressly moves to impose a sentence below the statutory minimum. See id (granting the court this authority "[u]pon motion of the Government"); see also *Melendez v. United States*, 518 U.S. 120, 125–26, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996).

But by its own terms, § 3553(e) applies to situations in which the court *imposes* a sentence. When the court instead *modifies* a previously-imposed term of imprisonment, its authority to do so is found in 18 U.S.C. § 3582(c). That section allows the court to modify a defendant's term of imprisonment under certain circumstances and expressly authorizes the court to modify a prison term to the extent permitted under Rule 35. See § 3582(c)(1)(B). Rule 35, in turn, governs the court's exercise of discretion in correcting or reducing a sentence.

Rule 35 expressly provides that, upon the government's motion to reduce a sentence under subsection (b), the court "may reduce the sentence to a level below the minimum sentence established by statute." See F.R.Cr.P. 35(b)(4). Unlike § 3553(e), neither § 3582 nor Rule 35 contains any language limiting the court's authority in this regard to cases in which the government expressly has moved to reduce a sentence below the statutory minimum. The plain language of § 3582 and Rule 35, therefore, support defendant's position that the court may, under Rule 35(b), reduce a prison sentence below the statutory minimum.

The government nonetheless argues that, the court may not reduce a defendant's sentence to below the statutory minimum unless the government moves to do so, citing *Melendez,* a case that involved the initial imposition of a sentence under § 3553(e), rather than the later reduction of a sentence. In *Melendez,* the government moved under § 5K1.1 of the Sentencing Guidelines to depart downward from the sentencing range set by the Guidelines. *Melendez,* 518 U.S. at 123, 116 S.Ct. 2057. The defendant argued that the government's motion pursuant to § 5K1.1 gave the court the authority to depart below not only the Guidelines sentencing level but also the applicable statutory minimum. *Id.*

Writing for the majority of the Supreme Court, Justice Thomas rejected this proposition, explaining that "nothing in § 3553(e) suggests that a district court has power to impose a sentence below the statutory minimum to reflect a defendant's cooperation when the [g]overnment has not authorized such a sentence, but has instead moved for a departure only from the applicable Guidelines range." *Id.* at 126, 116 S.Ct. 2057. Justice Thomas also explained that "§ 5K1.1 [did not] attempt[ ] to exercise this nonexistent authority," because § 5K1.1 merely states that upon the government's motion, the court may only depart from the *guidelines. Id.* at 127, 116 S.Ct. 2057; see also 18 U.S.C.Appx. § 5K1.1. Accordingly, the district court's decision not to depart from the statutory minimum was proper, because the district court lacked the authority to impose a sentence below the statutory minimum unless the government specifically requested such a departure. See *id.* at 130, 116 S.Ct. 2057; see also *United States v. Castaneda,* 94 F.3d 592, 594 (9th Cir.1996) (characterizing *Melendez* as preventing a district court from "impos[ing a] sentence below a statutory minimum term unless the government's [§ ]3553(e) motion specifically requests such a sentence").

The court finds *Melendez* inapposite. *Melendez* involved the initial *imposition* of a sentence, rather than its later *modification.* In *Melendez,* no language in § 5K1.1 purported to give the court authority to depart

below the statutory minimum, while Rule 35(b)(4) expressly authorizes the court to do so. It might be argued that the Rule 35(b)(4) grant of authority is not of equal dignity with the § 3553(e) statutory motion requirement. But any doubts about the binding force of Rule 35(b)(4) are dispelled by § 3582(c)(1)(B), the statutory provision that expressly authorizes the court to act in accordance with the provisions of Rule 35. The government cites no authority for extending the holding of *Melendez* to a motion under Rule 35(b) for modification of a sentence for substantial assistance, and the court has found none. Because the modification of a prison term is governed by § 3582(c) and Rule 35(b), rather than § 3553(e), *Melendez* does not apply to the court's resolution of this motion.

The government asserts, however, that the imposition/modification classification is a distinction without a difference, citing *United States v. Chavarria–Herrara,* 15 F.3d 1033 (11th Cir.1994). In *Chavarria–Herrara,* the Eleventh Circuit held, *inter alia,* that the government may appeal a district court's determination of a Rule 35(b) sentence reduction under 18 U.S.C. § 3742, which allows the appeal of an otherwise final sentence. *Chavarria–Herrara,* 15 F.3d at 1034–36. With respect to the narrow issue of appealability, the *Chavarria–Herrara* court found no persuasive rationale for distinguishing a Rule 35(b) sentence modification from an initial sentence imposition.

Having determined that a sentence reduction pursuant to Rule 35(b) is appealable, however, the Eleventh Circuit in *Chavarria–Herrara* then turned to the substantive issue being appealed by the government: whether a district court has the power under Rule 35(b) "to reduce sentences 'to a level below that established by statute as a minimum sentence.' " *Id.* at 1036. The court unambiguously rejected the government's attempt to limit the court's discretion, holding that "Rule 35(b) gives the district court the authority to impose a sentence below the mandatory minimum after the government makes a motion for substantial assistance under Rule 35(b)." *Id.* at 1037. The court vacated and remanded the sentence for the sole rea-

son that the district court had considered factors other than the defendant's assistance in ruling on the Rule 35(b) motion. *Id.*

The plain language of Rule 35(b)(4) and § 3582(c)(1)(B) empower the court, once the government has filed a motion under Rule 35(b), to reduce the sentence at issue below the statutory minimum. *Chavarria–Herrara,* 15 F.3d at 1036–37, explicitly affirms this power. See also *United States v. Mims,* 306 F.Supp.2d 683, 686 (E.D.Mich.2004)(on government motion under Rule 35(b)(4), district court has authority to depart downward below the minimum terms mandated by the applicable statutes for both custodial and supervised release portions of sentence). It seems logical to conclude, therefore, that once the government has brought a motion under Rule 35(b), the court has the independent authority to depart below the statutory minimum—and the government posits no convincing argument or controlling authority that would explain away the existence of such authority.

This court believes, moreover, that there are sound policy reasons for district courts' wider latitude to depart from statutory minimums on a post-sentence substantial assistance motion than on a pre-sentence motion. When the court reduces a defendant's sentence under Rule 35(b), such a reduction will be based on substantial assistance of a different character from that which the court could have considered at the time the defendant's sentence initially was imposed. The government cannot bring a Rule 35(b) motion unless the defendant's assistance was rendered, became useful to the government or reasonably appeared useful more than one year after the defendant was originally sentenced. See Rule 35(b)(2). Thus, in the context of a Rule 35(b) motion, the relevant "substantial assistance" will very often concern assistance that the defendant has rendered *after* he has been both sentenced and incarcerated in a prison. The nature and quality of such assistance obviously cannot be known at the time the court initially imposes a sentence upon the defendant.

Further, such assistance may often involve a different type and magnitude of personal risk to the defendant. Before sentencing, a defendant's assistance is likely to be focused on criminal activity outside the prison system; after sentencing, a defendant may be in a better position to render assistance in investigations into criminal activity taking place in prison. The risks a defendant takes in acting as an informant against other prisoners and prison personnel is almost certainly greater on average. Indeed, the case at bar may be the paradigm case that illustrates such a difference. This important difference justifies the court's wider latitude under Rule 35(b)to reduce the sentence below the statutory minimum.

For these reasons, the court concludes that Rule 35(b)(4), as incorporated by § 3582(c)(1)(B), gives the court the authority to reduce defendant's sentence below the statutory minimum to time served, if such a reduction is warranted.

## B

Having devoted the foregoing discussion to whether it possesses the power to reduce defendant's sentence below any applicable statutory minimum, the court now considers whether there is any such minimum in this case. The government argues that defendant is subject to a 20–year statutory minimum sentence under 21 U.S.C. § 960(b)(1), defendant argues that his sentence was calculated under 21 U.S.C. § 960(b)(3), which mandates no minimum sentences.

As discussed in section I above, defendant was convicted under the MDLEA, which states that individuals who violate the MDLEA for the first time should be sentenced in accordance with the penalties prescribed in 21 U.S.C. § 960. See 46 U.S.C.Appx. § 1903(g)(1). The government argues that, because the offense of which defendant was convicted involved more than 70 tons of hashish, defendant should be sentenced in accordance with § 960(b)(1), which prescribes a minimum mandatory sentence of 10 years for most of the offenses it covers. The government further contends that defendant has at least one prior drug conviction, which raises the mandatory minimum sentence under § 960(b)(1) to 20 years. Defendant does not dispute that he has a prior

drug conviction, but he challenges the applicability of § 960(b)(1) and instead contends that the appropriate sentencing provision is § 960(b)(3), which prescribes no mandatory minimum.

The court agrees with defendant's position. Defendant's MDLEA conviction is based upon his attempts to import a large quantity of hashish. 21 U.S.C. § 812 lists the various schedules of controlled substances and includes hashish's active ingredient, tetrahydrocannabinol (THC), as a Schedule I controlled substance. See § 812(c)(17). Section 960(a) outlaws the importation of any controlled substance, and § 960(b) outlines the various penalties for such an offense, depending upon the type and quantity of substance involved. Section 960(b)(1)—which the government contends contains the relevant statutory minimum in this case—specifically lists the types and quantities of controlled substances to which it applies. See § 960(b)(1)(A)-(H). But as defendant notes, § 960(b)(1) makes no mention of either hashish or THC. Similarly, § 960(b)(2), which provides lower sentences for lower quantities of the same controlled substances listed in § 960(b)(1), also fails to mention hashish or THC. On its face, therefore, § 960(b)(1) does not seem to apply to defendant.

The government makes several arguments that § 960(b)(1) applies, even though hashish or THC is not specifically listed. First, the government contends that defendant's concession that his sentence is proper under § 960(b)(3), which does not specifically list hashish or THC, is at odds with his argument regarding § 960(b)(1). The court does not agree that the two positions are inconsistent. Section 960(b)(3), although failing specifically to mention hashish or THC, states that it applies to violations of § 960(a) that involve "a controlled substance in schedule I or II * * *." As noted above, THC is listed as a schedule I controlled substance. See § 812(c)(17). Thus, § 960(b)(3) is applicable on its face to defendant.

The government also points out that § 960(b)(1) prescribes a mandatory minimum for 1000 kilograms of a substance containing marijuana and argues that it would make little sense to prescribe a mandatory mini-

mum for marijuana and not for hashish, which is essentially a substance that contains a more highly concentrated form of the psychotropic substance that marijuana contains. But the omission of any mention of the active ingredient or hashish itself cannot be brushed aside. Congress has constructed an elaborate scheme of punishments for different substances and for defined quantities of those substances. Given the intense particularization of the Congressional scheme, it is not unreasonable for courts to apply that scheme with a measure of literalness.

The government's effort to elide these distinctions is undercut by the text of the statute itself. Neither § 960(b)(1) or (2) specifically mentions hashish or THC, but both mention marijuana. Section 960(b)(4), which applies to certain violations of § 960(a), specifically and separately lists violations involving certain quantities of marijuana, violations involving certain quantities of hashish and violations involving certain quantities of hashish oil. Based on this language, it is evident that Congress was capable of differentiating between marijuana and hashish and nevertheless failed to mention hashish in § 960(b)(1). When Congress "includes particular language in one section of a statute but omits it another section of the same [a]ct, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal quotation and citation omitted). The court ought to presume that Congress acted intentionally by including marijuana but excluding hashish from § 960(b)(1). And, in keeping with the rule of lenity in criminal cases, any doubts about Congress' intentions must be resolved in favor of defendant. See *Ratzlaf v. United States*, 510 U.S. 135, 148, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

The government's final contention, which is something of a variation on its previous argument, is that hashish is actually a form of marijuana and should be treated as marijuana for sentencing purposes. But this argument must be rejected because it is obviously incorrect. First, as noted above, § 960(b) does not treat hashish as a form of marijua-

na, as it lists the two drugs separately from each other in § 960(b)(4). Second, § 812 does not treat hashish as a form of marijuana. As noted previously, hashish is sometimes called by the name of its active ingredient, THC. Indeed, defendant argued both in its papers and at the hearing that the *indictment itself* characterized hashish as THC— an assertion the government has not disputed. See Def. Supp. Resp. (Doc. # 1607) at 4:15–22. Section 812(c)(10) lists marijuana as a schedule I controlled substance, while § 812(c)(17) lists THC as a separate schedule I controlled substance. Congress thus distinguished between hashish and marijuana and classified them as separate types of controlled substances, notwithstanding their relationship to one another. This distinction between the two substances is reinforced by the Sentencing Guidelines' separate treatment of marijuana and hashish. See, e.g., 18 U.S.C.S.Appx. 2D1.1(c) (separately listing marijuana, hashish and hashish oil in the Drug Quantity Table); 18 U.S.C.S.Appx. 2D1.1, "Notes Following Drug Quantities," subsections (I) & (J) (defining hashish and hashish oil without characterizing them as forms of marijuana).

Thus, the court concludes that defendant's sentence must be based on § 960(b)(3) rather than § 960(b)(1). As such, defendant is subject to no mandatory minimum. Accordingly, the court concludes that it is free to reduce defendant's sentence to time served, if such a reduction is appropriate.

### C

■ Having determined that it has the power to reduce defendant's sentence to time served, the court must now decide whether the government's motion to reduce defendant's sentence should be granted and, if so, whether to reduce the sentence to 240 months (as the government suggests) or to time served (as defendant suggests). As stated above, the government's motion to reduce defendant's sentence based on his substantial assistance is brought pursuant to Rule 35(b). Although Rule 35(b) does not define "substantial assistance," both parties agree that § 5K1.1 supplies the appropriate guidelines for evaluating substantial assistance. See also *United States v. Gangi*, 45 F.3d 28, 30–31 (2d Cir.1995) (adopting the § 5K1.1 factors for use under Rule 35(b)). According to § 5K1.1, the following factors are relevant to assessing substantial assistance: (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into account the government's evaluation of the assistance rendered; (2) the truthfulness, completeness and reliability of the information or testimony provided by the defendant; (3) the nature and extent or the defendant's assistance; (4) any injury suffered or any danger or risk of injury to defendant or his family resulting from the assistance; and (5) the timeliness of the defendant's assistance.

In the case at bar, the government recommends that the court find that defendant's assistance has been both significant and useful under factor (1) of the § 5K1.1 test. It is also undisputed that defendant provided truthful, complete and reliable information in a timely fashion; thus, factors (2) and (5) of the § 5K1.1 test have been met. Further, it is undisputed that factors (3) and (4) (the nature and extent of defendant's assistance and the possible risk defendant faces) both favor a sentence reduction. But defendant disputes the government's characterization of defendant's situation, claiming that the government understates both the value and significance of defendant's assistance and the risk defendant faces as a result of his assistance. The government and defendant also offer opposing views regarding the nature of defendant's underlying offense and his disciplinary record since his incarceration. Thus, the court must evaluate for itself the significance and usefulness of defendant's assistance to determine the extent to which defendant is entitled to a sentence reduction. The court must also consider whether the nature of defendant's crime and his subsequent disciplinary record warrant a denial of the motion altogether or at least a smaller reduction than defendant requests.

With respect the court's evaluation of the significance and usefulness of defendant's testimony, the court finds that defendant's assistance is highly significant and useful— perhaps more so than the government is

willing to concede. Defendant cooperated with the Illinois prosecutors for approximately three years. See Gov't Mot., Exh. A at 1. During that time, defendant was required carefully to plan his actions so that his identity as an informer was not disclosed. For example, defendant enlisted the assistance of his lawyer, who acted as an intermediary to pass information to the governmental investigators. See id. at 3; Markham Decl. at 2 ¶ 8, Exh. 6 (listing more than 100 occasions on which defendant's lawyer passed information from defendant to the investigators). The efforts defendant put into his assistance are indisputably substantial.

Defendant's assistance ultimately proved quite useful to the government. As defendant notes, the problem with which defendant assisted is particularly significant and grave. Defendant's cooperation was in support of the government's investigation into drug use by prisoners, a problem aggravated by the involvement of prison officials in the distribution of such drugs. Drug use by prisoners is serious enough. See Markham Decl. at 2 ¶ 7, Exh. 5 at i (describing how drug use exacerbates prisoner misconduct and rehabilitation). But when prison officials aid and abet drug trafficking, the results are even more dire. See id. at v (noting that trafficking by prison officials typically involves a greater quantity of drugs and a greater number of prisoners, as well as resulting in an erosion of trust amongst the staff and the public). There is tragic irony in the government incarcerating individuals for drug use or trafficking, only to facilitate their further drug abuse at the hands of corrupt governmental officials. And defendant's assistance in this case has enabled the government to take substantial steps toward reducing this particular problem. As a result, the government has obtained the conviction of at least one prison staff member and of a ringleader among the inmates. See Gov't Mot., Exh. A at 3. Defendant's assistance has helped in other ways as well, including: (1) exposing a counterfeit drug-testing system; (2) preventing a knife fight and a hunger strike; and (3) exposing 27 inmates who participated in prison drug dealing. Id. at 2–3.

Furthermore, the risks to which defendant has exposed himself seem to be substantial and very real. Apparently, word has gotten out and continues to spread that defendant was the informant involved in the aforementioned investigation. See id. at 7. It can hardly be doubted that a "turncoat" such as defendant will be reviled by his fellow inmates, and defendant no doubt faces an ongoing threat that those inmates will attack him. See generally Markham Decl. at 2 ¶ 4, Exh. 2. Although defendant has been shuttled from prison to prison since the time of his cooperation, he has been attacked by other prisoners on at least one occasion. Gov't Mot., Exh. A at 7–8. The dangers defendant faces are significantly increased by the fact that defendant's assistance implicated prison officials. Defendant has already been confronted at least once by a group of correctional officers angry that defendant had turned on "brother guards." Id. at 8. Moreover, prison officials may be contributing to the inmates' efforts to punish defendant, by informing inmates of defendant's whereabouts. Id.

Based on this information, it is clear that defendant has risked his own well-being to provide the government with highly significant and useful assistance. But the court also should consider the nature of the crime for which defendant has been imprisoned, as well as his subsequent disciplinary record. The crime for which defendant was convicted is a serious matter, involving 70 tons of hashish valued at about $250 million. See Gov't Reply (Doc. # 1606), Exh. B at 4–5 ¶ 6. Judge Lynch previously determined that defendant played a leading role in the orchestration of this crime. Markham Decl. at 2 ¶ 9, Exh. 7 at 2–3. Defendant supplied about $1 million in financial backing for the operation and expected to gain at least $20 million in profits. Gov't Reply, Exh. B at 9–10 ¶ 38.

Furthermore, defendant's substantial cooperation in the Illinois investigation does not mean that defendant has always behaved as a model prisoner. Before his sentencing, defendant apparently threatened one of his co-conspirators, Dennis Feroce, in an attempt to prevent Feroce from testifying against him. See id. at 10–12 ¶¶ 42–48. Be-

fore his sentencing, defendant also appears to have attempted to take out contracts on the lives of Feroce's girlfriend, mother or father, as well as the life of another cooperating co-defendant, Jack Hayden. See id. at 12–15 ¶¶ 49–61. And defendant has compiled a rather lengthy list of disciplinary infractions while in prison, including at least one fight with another prisoner and four instances of drug use—including during the time in which he was cooperating with the Illinois investigative team. See Gov't Reply, Exh. A at 3 ¶ 6.

■ Although defendant was involved in a serious crime and has continued to be a disciplinary problem, the court's view is that the value of defendant's assistance and the risks he faces nevertheless weigh in favor of granting the motion and reducing defendants' sentence. Determining the appropriate reduction is a difficult matter. Although the authority cited by the parties provides the court with ample information regarding *whether* a sentence reduction is appropriate, that authority supplies little guidance with respect to *the magnitude* of an appropriate sentence reduction. The court's own research of the case law affords little that would provide direction on this issue. It is clear that the court may not deviate beyond the § 5K1.1 factors in deciding to grant a Rule 35(b) motion.

On balance and after consideration of the § 5K1.1 factors, the court concludes that it is most appropriate to reduce defendant's sentence to time served, as defendant requests. On the one hand, the nature of defendant's crime and his continuing disciplinary issues do not favor treating defendant with any special degree of leniency. On the other hand, it is highly unlikely that defendant would have been able to be a useful government informant had he not been a relatively sophisticated criminal and, possibly, a less than exemplary inmate. In other words, defendant's ability to provide substantial assistance appears to be increased by some of the very factors that the government urges favor a smaller sentence reduction. And defendant's subsequent disciplinary problems involving drugs, while not insignificant, do not

seem to be of an especially unusual or unexpected type.

The government routinely obtains information highly useful in its law enforcement and prosecutorial activities from individuals who themselves have engaged in serious criminal activity and displayed dubious character. This is not a proud business, but a necessary if regrettable one. In this case, defendant's cooperation exposed both inmate wrongdoing and government corruption, as well as fostered their successful prosecution. Government corruption violates fundamental values and corrodes basic institutions. Because such corruption is so destructive, the benefit of defendant's cooperation outweighs the burden of his criminal past and disciplinary record. Defendant has already served a long period of incarceration. Going forward, this together with the great value of his cooperation strike a balance in defendant's favor when it comes to deciding the magnitude of a sentence reduction.

Furthermore, it is clear that defendant remains at risk for retaliation both from his fellow inmates and from prison personnel themselves. It is the peculiar nature of this risk and the concomitant benefit to the government of defendant's cooperation that makes this case remarkable. The government seeks to eradicate a grave problem within prison walls, but defendant cannot assist the government in solving that problem without also hazarding retaliation at the hands of those who guard him. A sentence reduction to time served is appropriate, therefore, to attempt to forestall another grave problem within prison walls—prisoner abuse.

Accordingly, the court GRANTS the Rule 35 motion to reduce defendant's sentence (Doc. # 1601) but, rather than reducing defendant's sentence to the 240 months recommended by the government, reduces defendant's sentence to time served.

### III

For the reasons stated above, the court GRANTS the government's motion to reduce defendant's sentence pursuant to Rule 35(b) (Doc. # 1601). Further, the court agrees with defendant that: ·(1) when acting on a

Rule 35(b) motion, the court has authority under Rule 35(b)(4) and § 3582(c)(1)(B) to depart below the mandatory minimum sentence, even when the government does not file a motion under § 3553(e); and (2) no mandatory minimum sentence applies to defendant in this case. The court adopts defendant's recommendation that the sentence be reduced to time served.

Defendant shall submit a proposed form of judgment. The parties are directed to file appropriate motions with the court within ten days of the date of this order regarding release or detention of defendant pending appeal.

IT IS SO ORDERED.