**UNITED STATES of America,**
**Appellee,**

v.

**Silvio SPALLONE, Defendant–**
**Appellant.**

**Docket No. 03–1791.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 15, 2004.

Decided: March 4, 2005.

---

Vivian Shevitz, South Salem, New York (Melvyn Roth, Garden City, New York, of counsel), for Defendant–Appellant.

Jeffrey A. McLellan, Attorney, Tax Division, United States Department of Justice, Washington, D.C. (Eileen J. O'Connor, Assistant Attorney General, Tax Division; Robert J. Lindsay, Alan Hechtkopf, John Hinton III, Attorneys, Tax Division, on the brief; Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, of counsel), for Appellee.

Before: SACK, RAGGI, and HALL, Circuit Judges.

RAGGI, Circuit Judge:

Defendant–Appellant Silvio Spallone pleaded guilty to income tax evasion, *see* 26 U.S.C. § 7201, in the United States District Court for the Eastern District of New York (Jacob Mishler, *Judge* ) and, on August 18, 2000, was sentenced to thirty months' imprisonment, three years' supervised release with a special condition that he pay restitution in the amount of $1,425,014, corrected on August 24, 2000 to $2,450,515, and a $100 special assessment. By order dated April 18, 2002 (Jacob Mishler, *Judge* ), the court reduced Spallone's sentence pursuant to Fed.R.Crim.P. 35(b) to "time served." *United States v. Spallone*, 99–CR–0317, Order (E.D.N.Y. Apr. 18, 2002). At issue on this appeal is a subsequent order, entered December 4, 2003 (Denis R. Hurley, *Judge* ), compelling Spallone to serve the supervised release term and to pay restitution as ordered in the original judgment of conviction. *United States v. Spallone*, 99–CR–0317, Order (E.D.N.Y. Dec. 4, 2003).[1] Spallone argues that this order is unlawful because it impermissibly attempts to modify or correct the reduced sentence imposed on April 18, 2002. We reject Spallone's argument. While a district court's ability to correct or modify a sentence is narrowly circumscribed by Fed.R.Crim.P. 35 and 36, it nevertheless retains inherent authority to interpret ambiguities in its own orders and judgments. In this case, there is such an ambiguity in the use of the term "sentenced" in the April 18, 2002 order granting Rule 35(b) relief. The district court did not exceed its authority in clarifying this ambiguity. Moreover, having reviewed the totality of circumstances *de novo*, we concur in the district court's conclusion that the April 18, 2002 order reduces only Spallone's incarceratory sentence and does not vacate the sentence of supervised release or restitution specified in the August 18, 2000 judgment of conviction. Accordingly, we affirm the December 4, 2003 judgment ordering Spallone to serve supervised release and to pay restitution.

## I. Factual Background

### A. Spallone's Original Sentence

On September 30, 1999, after several witnesses had testified against him at trial, Spallone pleaded guilty to two counts of income tax evasion in violation of 26 U.S.C. § 7201. On August 18, 2000, he was sentenced to concurrent thirty-month terms of incarceration and three-year terms of supervised release with a special condition that he pay restitution to the United States in the amount of $1,425,014, plus

---

1. Due to Judge Mishler's illness, Spallone's case was reassigned to Judge Hurley in October 2002.

interest and penalties. He was further sentenced to a $50 special assessment on each count of conviction for a total of $100. On consent of the parties, the court entered an order on August 24, 2000, correcting the restitution amount to reflect the victim's true loss of $2,450,515. *See* Fed. R.Crim.P. 35(a) (stating that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error").

B. *The Order Reducing Sentence Pursuant to Rule 35(b)*

Following imposition of judgment, Spallone began to cooperate with federal authorities, in consideration whereof the government, on July 9, 2001, moved in the district court for a reduction of Spallone's sentence pursuant to Fed.R.Crim.P. 35(b).[2] The government candidly advised the court that it was not then in a position to assess the value of Spallone's cooperation; nevertheless, it filed the motion to prevent the lapse of the rule's one-year limitations period. The government stated that it would submit supporting papers or withdraw the motion as soon as it had fully evaluated Spallone's assistance.

Nine months later, on April 1, 2002, the government filed a letter with the court detailing the investigative leads supplied by Spallone. Acknowledging that Spallone's cooperation had not yet led to any prosecutions, the government urged the court to rule on the pending Rule 35(b) motion to ensure that Spallone received consideration before he "served his entire term of incarceration." Prosecution Letter to Court, Apr. 1, 2002, at 2. In response to what appears to have been an informal court inquiry as to whether the

government opposed a sentence reduction to "time served," the government filed another letter stating that it did not. Prosecution Letter to Court, Apr. 17, 2002 ("In as much as Your Honor presided over the trial, took the defendant's plea and imposed the sentence, the government has no objection to any reduction of the defendant's sentence that Your Honor deems appropriate.").[3]

By order dated April 18, 2002, Judge Mishler granted the government's Rule 35(b) motion, ruling as follows:

> On April 1, 2002, the government respectfully submitted an[ ] application for a reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure in reference to the above named defendant Sylvio Spallone.
>
> The government having no objection to any reduction of the defendant's sentence as stated in their letter dated April 17, 2002[,]
>
> It is, ORDERED that the defendant Sylvio Spallone be sentenced to time served.

*United States v. Spallone*, 99–CR–0317 (E.D.N.Y. Apr. 18, 2002).

Judge Mishler did not thereafter enter an amended judgment of conviction in Spallone's case. Instead, it appears that a copy of his April 18, 2002 order was simply forwarded to the Bureau of Prisons, which promptly released Spallone, thereby sparing him the further six months' imprisonment, four months' custody in a half-way house, and ten weeks' home detention that he would otherwise have been required to serve pursuant to his original thirty-month prison sentence.

---

**2.** Rule 35(b), which is entitled, "Reducing a Sentence for Substantial Assistance," states, in pertinent part: "(1) ... Upon the government's motion made within one year of sentencing, the court may reduce a sentence if: (A) the defendant, after sentencing, provided substantial assistance in investigating or pros-

ecuting another person." Fed.R.Crim.P. 35(b)(1)(A).

**3.** The record does not indicate that Spallone filed any papers in support of the Rule 35(b) motion, and the parties refer to none in their briefs.

A release notice by the Bureau of Prisons advised Spallone of his obligation to report to a probation officer within three days of arrival in his resident district and supplied the name and business address of the Chief Probation Officer for the Eastern District of New York. The same release order, on a line intended to alert Spallone to outstanding obligations including "fine, restitution, etc.," noted "N/A," presumably meaning "not applicable."

### C. The Motion to Compel Supervised Release and Restitution

Following his release from custody, Spallone did not report to the United States Probation Department to begin serving his term of supervised release.[4] Accordingly, by letter motion dated November 5, 2002, the government requested the district court to order Spallone to comply with the supervision and restitution provisions of his judgment of conviction, arguing that Judge Mishler's April 18, 2002 order reduced only the incarceratory terms of Spallone's sentence.

In support of its motion, the government explained that its April 1, 2002 request for a ruling on the Rule 35(b) motion had been prompted by discussions with Spallone's counsel, who was "concern[ed] that the defendant would serve his entire 30–month sentence prior to the completion of the government's investigation and that, therefore, the defendant would not receive any reward for his cooperation." Prosecution Letter to Court, Nov. 5, 2002, at 2. The government noted that "during these discussions, there was never any consideration that the defendant's term of Supervised Release or his restitution payments be modified. The sole issue was when would the defendant be released from incarceration." *Id.* at 3. The government

asserted that the court's April 18, 2002 order answered this question, effectively ordering Spallone's "immediate release." *Id.* But "[a]t no time did the court abrogate its prior order that the defendant . . . complete 3 years of Supervised Release and make restitution." *Id.*

■ In a Memorandum and Order dated December 4, 2003, Judge Hurley granted the government's motion and ordered Spallone to serve the term of supervised release and to pay restitution ordered in his August 18, 2000 judgment of conviction. Judge Hurley ruled that the April 18, 2002 order granting Rule 35(b) relief was not a superseding judgment imposing an entirely new sentence, as defendant argued, but simply "a mechanism to modify the incarceration aspect of the earlier judgment," with no effect on the restitution and supervised release components of that judgment. *United States v. Spallone,* 99–CR–0317, Order at 6–7 (E.D.N.Y. Dec. 4, 2003). In support of this interpretation, Judge Hurley cited circumstances giving rise to the order:

The nature of the April 18, 2002 order must be viewed in the undisputed context in which it was issued: (1) defense counsel asked the government to make application to Judge Mishler to reduce the incarceration portion of the sentence so that Spallone would receive some benefit from his post sentence cooperation; (2) neither party mentioned the restitution or supervised release portions of Judge Mishler's sentence during those discussions; and (3) the government explained to Judge Mishler in its letter of April 1, 2002, that it was making the Rule 35(b) motion then, rather than later, because otherwise Spallone would have "served his entire term of incarceration" before the matter was presented to the Court.

---

4. His counsel advises, and the government does not dispute, that Spallone did, however,

pay approximately $876,000 in restitution to the United States.

*Id.* at 7. He further noted that Judge Mishler had entered "[n]o amended judgment ... to eliminate the restitution and supervised release portions of defendant's sentence." *Id.* at 7–8. Because the April 18, 2002 order, thus interpreted, did not reduce the supervised release and restitution sentences stated in the judgment of conviction, Judge Hurley concluded that he could grant the government's application without any need to "correct" an "error" in the April 18, 2002 order, action that would have implicated the limitations of Fed. R.Crim.P. 35(a) and 36.[5] *Id.* at 7.[6]

On Spallone's motion for reconsideration, Judge Hurley clarified that his interpretation of the April 18, 2002 order was not based simply on the fact that that ruling was labeled an "order" rather than a "judgment," but on the totality of circumstances. Citing the Seventh Circuit's decision in *United States v. Niemiec,* 689 F.2d 688 (7th Cir.1982), he concluded that such circumstances were properly considered in interpreting ambiguities in a court order. *United States v. Spallone,* 99–CR–0317, Order at 2–3 (E.D.N.Y. Feb. 17, 2004).

## II. *Discussion*

### A. *A Court's Inherent Authority to Interpret Ambiguities in its Judgments*

▮ Spallone argues that we must reverse the district court's order of December 4, 2003, because the court had no authority to modify or correct the sentence of "time served" imposed on April 18, 2002. To be sure, a court may not resentence a defendant unless expressly mandated by this court, *see* 28 U.S.C. § 2106, or pursuant to the strict conditions established by Fed.R.Crim.P. 35 or 36. *See United States v. Werber,* 51 F.3d 342, 346–49 (2d Cir.1995); *United States v. Gangi,* 45 F.3d 28, 30 (2d Cir.1995); *see also United States v. Handa,* 122 F.3d 690, 691 (9th Cir.1997). This limiting principle prohibits a court from altering a judgment that is clear on its face, even if not reflective of the court's actual intent. *See United States v. Werber,* 51 F.3d at 347. But where an order or judgment is unclear, a court retains inherent authority to interpret ambiguities.

▮ The law has long recognized that "the mere construction of a decree involves no challenge of its validity." *St. Louis. Kan. City & Colo. R.R. Co. v. Wabash R.R. Co.,* 217 U.S. 247, 250–51, 30 S.Ct. 510, 54 L.Ed. 752 (1910). Thus, if a "judgment is clear and unambiguous," a court must "adopt, and give effect to, the plain meaning of the judgment." 46 Am.Jur.2d Judgments § 93 (West 2004). But, "if the judgment is ambiguous, the reviewing court must construe its meaning, and in doing so may resort to the record upon which the judgment was based." *Id.* Indeed, the

---

5. Rule 35(a) permits courts to "correct a sentence that resulted from arithmetical, technical, or other clear error," but only "[w]ithin 7 days after sentencing." Fed.R.Crim.P. 35(a). Rule 36 places no time limit on sentence corrections, but it applies only to clerical errors: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed.R.Crim.P. 36.

6. Alternatively, Judge Hurley concluded that, even if the April 18, 2002 order were interpreted as a superseding judgment, Spallone's conduct leading up to his prison release had effectively waived any claim that he was no longer subject to supervised release and restitution, such that he was now "estopped" from advancing that argument. *See id.* at 8–9. Because we do not interpret the April 18, 2002 order as a superseding judgment, we need not reach the issue of estoppel.

power to construe a court decree is essential to its enforcement. *See SEC v. Hermil, Inc.*, 838 F.2d 1151, 1153 (11th Cir. 1988) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order.").

In this case, we conclude that Judge Hurley's December 4, 2003 order did not exceed the court's authority. The order does not attempt to resentence Spallone or to correct a perceived error in Judge Mishler's April 18, 2002 order granting Rule 35(b) relief. Rather, the December 4, 2003 order properly clarifies an ambiguity in the April 18, 2002 order with respect to the term "sentenced" by reasonably construing that term, in light of the totality of the circumstances, to mean that only the sentence of incarceration in defendant's judgment of conviction was reduced.

### B. *The Ambiguity in the April 18, 2002 Order*

■ The April 18, 2002 order rules on an "application for a reduction of sentence pursuant to Rule 35(b)." *United States v. Spallone*, 99–CR–0317, Order (E.D.N.Y. Apr. 18, 2002). In granting the motion, Judge Mishler ordered that Spallone "be *sentenced* to time served." *Id.* (emphasis added). The highlighted word is ambiguous because it is subject to more than one plausible construction. *See, e.g., Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 149 (2d Cir.1993) (noting that language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person") (internal quotation marks and citation omitted). It

could be interpreted, as defendant submits, to mean that Spallone's entire sentence as stated in his August 18, 2000 judgment of conviction had been reduced to time served, thereby absolving him of any responsibility to satisfy the supervised release and restitution provisions of that judgment. On the other hand, the word can also be interpreted, as the government urges, to mean that Spallone's incarceratory sentence had been reduced from thirty months to time served with no change to the supervised release term and restitution condition in the judgment of conviction.

A "sentence" is commonly understood to be "the order by which a court or judge imposes punishment or penalty upon a person found guilty." *Webster's Third New International Dictionary* 2068 (1993); in short, the judgment of conviction, *see Black's Law Dictionary* 1367 (8th ed.1999) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty"); *Oxford English Dictionary* 991 (2d ed. 1989) ("The judicial determination of the punishment to be inflicted on a convicted criminal"). Under federal law, however, the April 18, 2002 order is not a judgment of conviction. *See* Fed.R.Crim.P. 32(k) (requiring judgment of conviction to "set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence").[7]

The term "sentence" is also commonly understood to refer simply to "the punishment or penalty" imposed by the court. *Webster's Third New International Dictionary* 2068; *accord Black's Law Dictionary*

---

**7.** To comply with these requirements, district judges routinely employ a multi-page form judgment of conviction created by the Judicial Conference of the United States. *See* AO 245B (rev.12/03), *available at* http://www.nyed.circ2.dcn/dc/Court_Forms/AO245B.wpd; Rep. of the Jud. Conf. of the United States, at 18 (Sept. 23, 2003), *available at* http://www.uscourts.gov/judconf/sept03proc.pdf (approving revised form AO 245B). Indeed, Judge Mishler used a predecessor version of the form, *see* AO 245B (rev.8/96), in entering Spallone's August 18, 2000 judgment of conviction.

1367 ("the punishment imposed on a criminal wrongdoer," for example, "a sentence of 20 years in prison"); *Oxford English Dictionary* 991 ("the punishment to which a criminal is sentenced"). So used, "sentence" sometimes refers to the totality of punishment imposed. *See. e.g., United States v. Handakas,* 329 F.3d 115, 116 (2d Cir.2003) (noting that the defendant's "sentence included a term of imprisonment, a fine, an order of restitution, an order of forfeiture, and three years of supervised release"); *United States v. Sweeney,* 90 F.3d 55, 56 (2d Cir.1996) (noting that "sentence, as ultimately revised, included forty-eight months of incarceration, a fine, an order of restitution, and a three-year term of supervised release"). On the other hand, with equal frequency, "sentence" is used to refer to each punishment within the judgment of conviction, most particularly to the term of incarceration. *See, e.g., United States v. Johnson,* 378 F.3d 230, 236 (2d Cir.2004) (noting that on a sentencing remand wherein restitution was ordered, the court "imposed a sentence of 57 months' incarceration"); *United States v. Boyd,* 222 F.3d 47, 48 (2d Cir.2000) *(per curiam* ) (noting that challenge to "sentence" faulted court for calculating restitution on one basis while calculating "prison sentence" on another); *United States v. Bove,* 155 F.3d 44, 45 (2d Cir.1998) (noting that application of the Sentencing Guidelines "produced a concurrent prison sentence of 12 months and 1 day on each count, a three-year term of supervised release, a $100 special assessment and a $15,000 fine"); *see also* 18 U.S.C. § 3553(c)(1) (using term "sentence" to refer only to prison sentence in requiring a statement of reasons "for imposing a sentence at a particular point within" a Guideline range that "exceeds 24 months").

Precisely because the word "sentence" can plausibly support different meanings, it was necessary and appropriate for Judge Hurley to interpret the April 18, 2002 order to clarify whether the sentence of "time served," as imposed, superseded all punishments imposed in Spallone's judgment of conviction or only his thirty-month prison term.

## C. *The April 18, 2002 Order Reduces Only Spallone's Incarceratory Sentence*

### 1. *Standard of Review*

▮▮▮▮ The interpretation of the text of a court order or judgment is considered a conclusion of law subject to *de novo* review. *See In re Duplan Corp.,* 212 F.3d 144, 151 (2d Cir.2000) (reviewing bankruptcy court's interpretation of district court order *de novo* ); *SEC v. Salomon Inc.,* 78 F.3d 802, 805 (2d Cir.1996) (applying *de novo* review to terms of a final judgment). When an issuing judge interprets his own orders, we accord substantial deference to the draftsman, and we will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion. *See In re Blackwood Assocs., L.P.,* 153 F.3d 61, 66 (2d Cir.1998) (explaining that such deference is premised on "the truism that the draftsman of a document is uniquely situated to understand the intended meaning of that document"); *County of Suffolk v. Stone & Webster Eng'g Corp.,* 106 F.3d 1112, 1117 (2d Cir. 1997) (stating that issuing judge's interpretation should not be disturbed "absent a clear abuse of discretion"); *Truskoski v. ESPN, Inc.,* 60 F.3d 74, 77 (2d Cir.1995) (per curiam) ("It is peculiarly within the province of the district court ... to determine the meaning of its own order.") (internal quotation marks omitted). That, however, is not this case. Because Judge Hurley did not draft the April 18, 2002 order, we apply traditional *de novo* review to his interpretation. *Cf. In re Blackwood Assoc.,* 153 F.3d at 66 (bankruptcy court's

interpretation of stipulation drafted by the parties entitled to no special deference).[8]

### 2. *Interpreting Ambiguities in Court Orders*

Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court. *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 286 (3d Cir. 1991) (stating that court's responsibility is "to construe a judgment as to give effect to the intention of the court, not to that of the parties" (quoting *United States v. 60.22 Acres of Land, More or Less, Situate in Klickitat County*, 638 F.2d 1176, 1178 (9th Cir.1980))); *see also In re 85–02 Queens Boulevard Assocs.*, 212 B.R. 451, 455 (Bankr.E.D.N.Y.1997) (citing 46 Am. Jur.2d Judgments § 94 (West 1994)). As a general matter, a court decree or judgment "is to be construed with reference to the issues it was meant to decide." *Mayor & Aldermen of City of Vicksburg v. Henson*, 231 U.S. 259, 269, 34 S.Ct. 95, 58 L.Ed. 209 (1913). Thus, an order "will not be construed as going beyond the motion in pursuance of which the order was made, for a court is presumed not to intend to grant relief which was not demanded." *Harrigan v. Mason & Winograd, Inc.*, 121 R.I. 209, 213, 397 A.2d 514, 516 (R.I.1979)(internal citations omitted); *see Prouty v. Clayton County*, 264 N.W.2d 761 (Iowa 1978); 56 Am.Jur.2d Motions § 48 (West 2004).

Although "[c]ourt orders 'must ordinarily be interpreted by examination of only the "four corners" of the document,'" *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d at 286) (quoting *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 961 (3d Cir.1981)), where, as in this case, an ambiguity in terminology results in a lack of clarity as to the scope of the ruling, a reviewing court may properly examine "'the entire record for the purpose of determining what was decided,'" *id.* (quoting *Security Mut. Cas. Co. v. Century Cas., Co.*, 621 F.2d 1062, 1064 (10th Cir.1980)); *see also United States v. Motor Vehicle Mfrs. Ass'n*, 643 F.2d 644, 651 (9th Cir.1981) ("While the district court is bound to construe the judgment by the meaning to be found within its 'four corners,' the court may also consider the surrounding circumstances at formation as aids in construing the judgment." (internal citation omitted)); *Eaton v. Courtaulds of N. Am., Inc.*, 578 F.2d 87, 91 (5th Cir.1978) ("Where ambiguities exist in the language of a consent decree, the court may turn to other 'aids of construction,' such as other documents to which the consent decree refers, as well as legal materials setting the context for the use of particular terms."); *Capetan v. Brownell*, 148 F.Supp. 519, 520 (E.D.N.Y.1957) ("In construing orders and judgments, the entire contents of the instrument and the record should be taken into consideration in ascertaining the intent.") (citing *Smith v. Comm'r of Internal Revenue*, 67 F.2d 167 (4th Cir.1933))).

### 3. *The April 18, 2002 Order*

Applying these principles to this case, we preliminarily observe that Rule 35(b) authorizes a district court to reduce any aspect of a defendant's sentence, including supervised release terms and orders of restitution not mandated by statute. *See United States v. McMillan,*

---

8. Similarly, because the Bureau of Prisons did not draft the April 18, 2002 order, we reject Spallone's suggestion that its interpretation, as possibly reflected in Spallone's notice of release, is entitled to any special weight.

106 F.3d 322, 324–25 (10th Cir.1997).[9] Nevertheless, we conclude from the totality of circumstances that the "sentence" reduced by the district court's April 18, 2002 order was only Spallone's prison sentence. The order is not fairly construed to reduce the sentences of supervised release and restitution stated in Spallone's August 18, 2000 judgment of conviction.

▆ In reaching this conclusion, we begin with an observation derived from this court's review of countless records in criminal cases and undoubtedly well known to district courts: the primary—often singular—concern of the parties and the court when applications are made for sentence reductions (whether presented as pre-sentence motions for departure from the Sentencing Guidelines or post-judgment motions under Rule 35(b)) is the term of incarceration a defendant will have to serve. Only infrequently do such applications seek relief from post-release supervision or restitution because the very fact that a defendant will be subject to these non-incarceratory conditions may actually enhance the likelihood of a defendant securing a reduction in his term of confinement. Supervised release, after all, permits the court to monitor a defendant's reentry into society and to re-incarcerate him if a violation of supervision demonstrates that he was not, in fact, an appro-

priate candidate for early release. At the same time, continuing restitution obligations ensure that a released defendant cannot enjoy the proceeds of his crime while his victims continue to bear losses. These realities suggest that a reviewing court should proceed cautiously in assuming that a Rule 35(b) order reducing a defendant's prison sentence to time served also implicitly vacates all other punishments stated in the judgment of conviction, including supervised release and restitution.

Indeed, the record does not support such an assumption in this case. It demonstrates the district court's awareness that the parties sought a Rule 35(b) ruling in April 2002—before Spallone's cooperation had resulted in an arrest or prosecution—precisely to afford Spallone some reduction in his prison term before he completed the thirty-month sentence. This goal was expressly communicated in the government's April 1, 2002 letter, which was apparently written at the behest of defense counsel. The district court then inquired whether the government would oppose a sentence reduction to time served, in short, whether it opposed defendant's immediate release from custody. Nothing in the record indicates that the district court contemplated that,

**9.** Neither supervised release nor restitution were mandated by the statute of conviction in Spallone's case. *See* 26 U.S.C. § 7201; *see also* 18 U.S.C. § 3583(a) (affording district court discretion to impose supervised release on defendant sentenced to term of imprisonment, except where mandated by statute or where conviction is for crime of domestic violence); *id.* §§ 3663, 3663A (outlining discretionary and mandatory restitution). To the extent such punishments were called for under the Sentencing Guidelines, *see* U.S.S.G. § 5D1.1 ("The court shall order a term of supervised release ... when a sentence of imprisonment of more than one year is imposed...."); *id.* § 5E1.1 ("In the case of an

identifiable victim, the court shall ... (2) impose a term of ... supervised release with a condition requiring restitution for the full amount of the victim's loss" if the offense meets the criteria established by 18 U.S.C. § 3663(a)(1), or where supervision is mandated by statute), a substantial cooperation motion under Rule 35(b) authorized the court to reduce these sentences just as it could reduce a sentence of incarceration. *See United States v. McMillan,* 106 F.3d at 324–25; *cf. United States v. Barresi,* 361 F.3d 666, 675 (2d Cir. 2004) (recognizing supervised release as component of criminal sentence that may be adjusted upon remand for resentencing).

upon such release, Spallone would also be excused from supervision or restitution as stated in the judgment of conviction.

■ As Judge Mishler undoubtedly knew, his ability to modify these non-incarceratory punishments would not end abruptly with his ruling on the Rule 35(b) motion. Modifications to the conditions of supervised release are independently governed by 18 U.S.C. § 3583(e), which permits a court to terminate supervised release after one year, *see id.* § 3583(e)(1), or to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," *id.* § 3583(e)(2); *see also* Fed.R.Crim.P. 32.1 (outlining procedures for modifications of supervised release); *United States v. Navarro–Espinosa,* 30 F.3d 1169, 1171 (9th Cir.1994) (holding that even if district court lacked the power to correct defendant's sentence pursuant to Rule 35, it was authorized by Rule 32.1 and 18 U.S.C. § 3583(e)(2) to modify the sentence to include a condition of supervised release inadvertently omitted from the original judgment of conviction). Because restitution was made a special condition of Spallone's supervised release, we assume here, as we did in *United States v. Lussier,* that § 3583(e)(2) would have authorized the district court "to make some modifications" of this condition, at least with respect to the schedule on which Spallone paid restitution. 104 F.3d 32, 34 (2d Cir.1997); *see also* 18 U.S.C. § 3664(k). In sum, the time sensitivity prompting the government to seek a Rule 35(b) ruling in Spallone's case in April 2002, applied only to defendant's prison sentence; no comparable urgency pertained to his supervised release conditions or his restitution order.

■ Certainly, Spallone himself never asked the court to reduce his supervised release term or restitution obligation. We expect that he—or certainly his counsel— recognized the point we made earlier: the fact that Spallone remained subject to these non-incarceratory punishments likely made it easier for the district court to grant him the primary relief sought, *i.e.,* release from prison. This was not, after all, a case in which defendant's cooperation had produced such significant assistance or had demonstrated such remarkable rehabilitation that a district court would likely terminate all punishments stated in the original judgment of conviction. Further, the fact that the able and experienced district court judge proceeded by order rather than issuing an amended judgment indicates that he did not use the term "sentenced" to that sweeping effect in granting Rule 35(b) relief. Where an order is silent on a form of sentencing relief that was neither raised nor argued, and particularly where that form of relief is not routinely the focus of Rule 35(b) applications, we will not construe an ambiguity in the order to reach that issue. *Cf. Truskoski v. ESPN, Inc.,* 60 F.3d at 77 (refusing to disturb district court's ruling that an award of pension credits was not implicit in a judgment "because the pension-benefits question had not been raised or argued").[10] In sum, we conclude that the April 18, 2002 order "sentenced" Spallone to time served rather than thirty months' incarceration, leaving the supervised release and restitution provisions of the original judgment of conviction undisturbed.

In reaching this same conclusion, Judge Hurley cited approvingly to the Seventh Circuit's decision in *United States v.*

---

**10.** We note, however, that it may be prudent for district courts to file an amended judgment of conviction whenever they modify *any* part of an original judgment to avoid the sort of interpretive dispute at issue in this case.

*Niemiec,* 689 F.2d at 689–91. In that case, a defendant who received a Rule 35 reduction in his term of incarceration insisted that the court's order, by not reiterating the fine and costs imposed by his original judgment, necessarily vacated that part of his sentence. The Seventh Circuit disagreed, noting that the order "merely reduced the defendant's term of incarceration and did not mention a fine and costs and thus left them in a status quo position, unchanged and unaltered." *Id.* at 690. In reaching this decision, the court cited two factors that parallel circumstances of this case: (1) the reason prompting Niemiec's motion under Rule 35, defendant's failing health, was specifically directed at the term of incarceration; and (2) neither party mentioned the judgment's fine and costs provision in urging a sentence reduction. *See id.* at 690–91.

Spallone submits that *Niemiec* is distinguishable from this case because the version of Rule 35 then in effect afforded district courts more latitude in reducing sentences, *see* Fed.R.Crim.P. 35, *amended by* Pub.L. 98–473, Title II, § 215(b), 98 Stat. 1837 (1984) ("The court may reduce a sentence within 120 days after it is imposed...."), and in modifying judgments to reflect more accurately the intended sentence, *see United States v. Werber,* 51 F.3d at 348–49 (and cases cited therein). We agree that *Niemiec* is distinguishable, but not for the reasons stated by Spallone. In *Niemiec,* the Seventh Circuit concluded that the Rule 35 order issued by the sentencing judge was *unambiguous* in reducing only the defendant's term of incarceration, not his obligation to pay a fine and costs. *See United States v. Niemiec,* 689 F.2d at 690. It ruled that another district judge did not abuse his discretion, upon review of the totality of the circumstances, when he decided *not* to modify an order of the sentencing judge ruling that the Rule 35(b) award did not relieve defendant of

his obligations to pay the fine and costs. *Id.* at 693.

Were Spallone's Rule 35 order unambiguous, we agree that the present Rules of Criminal Procedure would not allow modification or correction. But, for reasons already discussed, we conclude that there is some ambiguity in the order's use of the word "sentenced." Accordingly, in this case, Judge Hurley did not exceed his authority in *interpreting* that word in light of the totality of the circumstances, including circumstances similar to those present in *Niemiec.* Further, on our own *de novo* review of the record, we reach the same conclusion as Judge Hurley. The word "sentenced," as used in Judge Mishler's Rule 35(b) order, is properly interpreted to refer only to Spallone's term of incarceration. In light of his cooperation, he was sentenced to time served instead of thirty months. Because the order does not supersede any other provisions of the original judgment of conviction, Spallone remains obligated to serve the imposed term of supervised release and to pay full restitution.

## III. *Conclusion*

For the reasons stated, we conclude:

(1) the limitations imposed by Fed. R.Crim.P. 35 and 36 on a district court's ability to modify or correct a sentence do not detract from a court's inherent authority to interpret an ambiguous term in a judgment or order; and

(2) on *de novo* review of the word "sentenced" in Judge Mishler's Rule 35 order, we conclude from the totality of the circumstances that the term refers only to Spallone's prison sentence, not to non-incarceratory punishments imposed in the original judgment of conviction, specifically, supervised release and restitution, which were neither raised nor argued in

connection with the Rule 35 motion and both of which Spallone must still satisfy.

The judgment of the district court is AFFIRMED.