Rockingham
No. 2006-943

JAY C. EDWARDS

v.

RAL AUTOMOTIVE GROUP, INC. *& a.*;

RAL AUTOMOTIVE GROUP, INC.

v.

JAY C. EDWARDS *& a.*

Argued: January 16, 2008
Opinion Issued: February 13, 2008

*Shaines & McEachern, P.A.*, of Portsmouth (*Robert A. Shaines* on the brief and orally), for Jay C. Edwards.

*Boyle Law Office P.L.L.C.*, of Plymouth (*John F. Boyle* on the brief), and *John Kuzinevich*, of Dover, Massachusetts, by brief and orally, for Minato Auto, LLC and James G. Boyle.

*Sakellarios & Associates*, of Manchester, for Richard Pepi, George P. DiLorenzo and RAL Automotive Group, Inc., joined in the brief of Jay C. Edwards.

*William S. Gannon, P.L.L.C.*, of Manchester, for R. Anthony Laughrey and David Gale, joined in the brief of Jay C. Edwards.

DALIANIS, J. Minato Auto, LLC (Minato) and its principal, James G. Boyle, appeal the order of the Superior Court (*Morrill*, J.) requiring them to indemnify RAL Automotive Group, LLC (RAL) for breach of contract damages that RAL was ordered to pay Jay C. Edwards. We reverse and remand.

The record reveals the following: Edwards owns land in Portsmouth on which he previously operated a Toyota franchise. In 1997, he sold his Toyota dealership and leased the dealership property to RAL for a twenty-year term. *RAL Automotive Group v. Edwards*, 151 N.H. 497, 497 (2004) (*RAL I*). In Section 4.2.1 of the lease, RAL agreed "[n]ot to assign, transfer, mortgage or pledge this Lease ... without the prior written consent of [Edwards], which consent shall not be unreasonably withheld or delayed." This provision of the lease further provided: "Notwithstanding any subletting or assignment, whether made with the consent of [Edwards] or not requiring [Edwards'] consent, [RAL] shall remain primarily liable hereunder." It also stated that "[a]ny attempted assignment ... except as permitted by this *Section 4.2.1*, shall be void."

In February 2001, RAL entered into a purchase and sale agreement to sell the assets of the dealership to Boyle. In September 2001, RAL, Minato and Boyle entered into multiple agreements intended to facilitate the

closing of this transaction. Among the agreements executed in September 2001 was an agreement between RAL and Minato purporting to assign Minato the lease RAL had with Edwards. *See id.* at 498. This agreement, entitled **"ASSIGNMENT OF LEASE AND LEASEHOLD INTERESTS,"** included the following provisions:

> 1. Assignment. Pursuant to the terms of the Asset Agreement, [RAL] hereby assigns, transfers and sets over unto [Minato] the Net lease and Option to Purchase entered into by and between [RAL] and ... Edwards dated July 28, 1997 (the "Landlord" and the "Lease") and all of ... [RAL's] rights, title and interests in and to the Premises commonly known as 3612 Lafayette Road, Portsmouth, NH ....

> 2. Assumption of Lease Liabilities. [Minato] hereby assumes and agrees to completely and punctually pay and perform all of [RAL's] financial liabilities and other obligations under the terms and conditions of the Lease. [Minato] acknowledges that Edwards has not yet provided written consent to this assignment and accepts the risk that he may not, as long as [RAL] satisfies [RAL's] obligations under a certain escrow agreement. Further, [Minato] shall defend, indemnify and hold [RAL] ... harmless of, from or against any loss, liability or damage of any nature whatsoever arising from, out of or under the Lease or the Premises which accrue from or after the date of this Assignment.

> ....

> 7. Consent. As a condition of this Assignment and subject to any terms of [Edwards'] consent, the Assignment shall be effective upon [Edwards'] consent which is the sole responsibility of [Minato] to obtain without recourse to [RAL] if [Minato] cannot obtain consent.

As part of the closing, Boyle assigned his interest in the purchase and sale agreement to Minato. In addition, Minato, Boyle and RAL entered into a cross-indemnity agreement. Under this agreement, Minato and Boyle agreed that Minato would:

> hold harmless and indemnify and defend [RAL] from any liability, loss, damage, or claim which [RAL] may suffer as a result of any claim, demand, cost, expense, judgment or similar obligation arising out of all contracts or obligations assumed by [Minato and Boyle] pursuant to the Portsmouth Toyota Sales Agreement or which relate to the operation of Portsmouth

Toyota from and after the date of the closing in accordance with the terms of the Purchase and Sale Agreement commonly referred to as the "Portsmouth Toyota Agreement" dated February 16, 2001 or as amended by written agreement signed by the parties.

In turn, RAL agreed to:

hold harmless and indemnify and defend [Minato and Boyle] from any liability, loss, damage, or claim which [Minato and Boyle] may suffer as a result of [any] claim, demand, cost, expenses, judgment or similar obligation arising out of the operation of Portsmouth Toyota prior to the closing and transfer of assets and the termination of [RAL's] operation of Portsmouth Toyota in accordance with the terms of the Purchase and Sale Agreement commonly referred to as the "Portsmouth Toyota Agreement" dated February 16, 2001, or as amended by written agreement signed by the parties except for any refusal of Edwards to consent to the assignment of lease.

Boyle also signed an "ACKNOWLEDGEMENT OF OBLIGATIONS" in which he agreed that: "his financial liabilities and obligations under Paragraph 19 of the Agreement for Purchase and Sale of Assets . . . , entered into by and between RAL . . . to Minato Auto, LLC shall continue and survive his assignment of the Agreement to Minato Auto, LLC."

The closing occurred on September 5, 2001. As of that date, Edwards had not yet consented in writing to the assignment. Nonetheless, RAL, Boyle and Minato closed their transaction, and Minato took possession of the premises and began operating Toyota of Portsmouth. *RAL I*, 151 N.H. at 498. On or about September 10, 2001, Edwards learned of the closing. When asked to sign the assignment agreement, he refused. *See id.*

In November 2001, RAL brought a declaratory judgment action to determine the duties, rights and financial obligations of the parties in connection with the lease into which RAL entered with Edwards and the lease assignment and cross-indemnity agreement into which it entered with Minato. *See id.* Minato and Boyle cross-petitioned to determine their rights and obligations as against RAL and Edwards and counterclaimed, seeking damages from RAL for breach of contract and misrepresentation. Among the issues before the trial court were: (1) who the current tenants were under the lease; and (2) who was financially liable for defaults under the lease.

In April 2003, the Superior Court (*Hollman*, J.) ruled that the purported assignment of the lease from RAL to Minato was void. *Id.* Specifically, the

court found that: (1) under the "clear and unambiguous" lease, Edwards' prior written consent was required for any assignment of the lease; (2) the assignment agreement provided that it would be effective upon Edwards' consent; (3) Edwards never consented in writing to the assignment; and (4) Edwards acted reasonably in withholding his consent. Based upon these findings, the trial court determined that the assignment agreement was "void per the clear and unambiguous terms of the Lease." Accordingly, it ruled that "RAL remains the tenant under the Lease," but that in RAL's absence, Minato became a tenant at will upon taking possession of the premises. *Id.*

With respect to Minato's claim for damages against RAL, the trial court rejected RAL's argument that this claim was barred by paragraph three of the assignment agreement in which Minato agreed to accept the premises "as is." The court observed that "given there was no valid assignment due to Edwards' lack of consent, it is arguable that this provision of the [assignment agreement] is not binding on Minato." The court then ruled: "Given the ... language [of the assignment agreement] and because Edwards did not provide his consent, written or otherwise, the court finds and rules that the Assignment is not valid[,] [and] [t]herefore, its provisions are not binding on RAL or Minato."

In August 2003, Edwards brought an action against RAL and its shareholders to recover sums owed under the lease. In response, RAL and its shareholders brought a third-party claim against Minato and Boyle for indemnification. Following a bench trial in August 2006, the Superior Court (*Morrill*, J.) ruled that RAL owed Edwards rent under the lease and that Minato and Boyle owed RAL indemnification. With respect to RAL's obligations under the lease, the court found that while Minato remained on the premises it had paid rent, but that after Minato vacated the premises on December 31, 2003, no rent had been paid. The unpaid lease obligations, less rental income that Edwards received, totaled $787,857.57. The court ruled that RAL was liable for this unpaid rent as the tenant under the lease. The court further found that Edwards made reasonable efforts to mitigate his damages. Moreover, the court ruled that pursuant to the lease with RAL, Edwards was "entitled to another ten years of lease payments less reasonably anticipated lease income received and reduced to present day value." The court awarded Edwards total damages of $1,249,439, plus attorney's fees and costs.

With respect to whether Minato and Boyle were required to indemnify RAL, the court decided that paragraph two of the assignment agreement was not void, but was severable from paragraph one of the agreement, which the court had voided in 2003. Accordingly, the court ordered Minato and Boyle to indemnify RAL for all amounts RAL owed Edwards.

On appeal, Minato and Boyle contend that the trial court erred by failing to apply and enforce the unambiguous terms of its 2003 decision. They assert that the 2003 decision voided the entire assignment agreement and, therefore, the trial court erred when it ruled that paragraph two of this agreement was valid. We agree.

As the trial court's 2003 decision was not appealed, it became a final judgment. *See In re Estate of Hemon*, 142 N.H. 584, 587-88 (1998). The interpretation of final judgments, like the interpretation of other written documents, is a question of law, which we review *de novo. See Estate of Frederick v. Frederick*, 141 N.H. 530, 531 (1996). In construing a final judgment, "we look to the plain meaning of the words used in the document." *Estate of Tremaine v. Tremaine*, 146 N.H. 674, 676 (2001) (construing divorce decree). We construe subsidiary clauses so as not to conflict with the primary purpose of the trial court's decree. *Bonneville v. Bonneville*, 142 N.H. 435, 438 (1997).

When we interpret court orders, the determining factor is the intent of the issuing court. *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005) (citing cases). "As a general matter, a court decree or judgment is to be construed with reference to the issues it was meant to decide." *Id.* (quotation omitted). While a trial court's construction of its own decree may be accorded deference on appeal, after the time for appeal from a judgment has passed, the trial court's post-judgment interpretation of the judgment is irrelevant to an appellate court's determination of the judgment's meaning. 50 C.J.S. *Judgments* § 534, at 93 (1997); *see First Union Nat. Bank v. Pictet Overseas Trust*, 477 F.3d 616, 620 (8th Cir. 2007); *Kerndt v. Ronan*, 458 N.W.2d 466, 470-71 (Neb. 1990). "Neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant." *Universal Assurors Life v. Hohnstein*, 500 N.W.2d 811, 814 (Neb. 1993) (quotation and brackets omitted). This is particularly the case where, as here, one trial judge is interpreting an order of another trial judge. *See Spallone*, 399 F.3d at 423; *Simburger v. Simburger*, 701 N.W.2d 880, 883 (N.D. 2005).

Under the plain meaning of the trial court's 2003 order, the court voided the entire assignment agreement, not merely its first paragraph. The trial court's order refers to the assignment agreement as a whole. The court describes the agreement first by its title and then by the phrase "the Assignment." When the court ruled that "the Assignment is void per the clear and unambiguous terms of the Lease," it was referring to the entire

agreement, not only its first paragraph. The trial court made this clear when it stated that "because Edwards did not provide his consent, written or otherwise, the court finds and rules that the Assignment is not valid. Therefore, its *provisions* are not binding on RAL or Minato." (Emphasis added.) The use of the plural "provisions" is further evidence that the court intended to void more than just paragraph one of the assignment agreement. Indeed, in this part of the order, the court was deciding that paragraph three of the assignment agreement was void.

Based upon our review of the plain meaning of the trial court's 2003 order, we hold that it voided the entire assignment agreement, rather than only one paragraph of it. Accordingly, the trial court erred when it later ruled that paragraph two of the assignment agreement remained valid.

Edwards asserts that even though the entire assignment agreement may have been void, other agreements into which the parties entered required Minato and/or Boyle to indemnify RAL for amounts owed under the lease. Specifically, he points to the parties' cross-indemnity agreement and the acknowledgement of obligations, which Boyle signed as part of the closing for the purchase and sale of assets.

The interpretation of a contract is a question of law, which we review *de novo. Barclay Square Condo. Owners' Assoc. v. Grenier*, 153 N.H. 514, 517 (2006). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Ryan James Realty v. Villages at Chester Condo. Assoc.*, 153 N.H. 194, 197 (2006). Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract. *Id.* The plain meaning of the cross-indemnity agreement and the acknowledgement of obligations does not support Edwards' argument.

By its plain terms, the cross-indemnity agreement obliged Minato to indemnify RAL only for those losses that RAL might suffer as a result of any obligation arising "out of all contracts or obligations assumed by [Minato and Boyle] pursuant to the Portsmouth Toyota Sales Agreement or which relate to the operation of Portsmouth Toyota from and after the date of the closing." RAL's obligations under the lease pre-date the closing and, while the purchase and sale agreement listed as an exhibit all of the contracts that Minato assumed pursuant to it, the lease between RAL and Edwards was not listed. Further, paragraph four of the purchase and sale agreement specifically stated that "[e]xcept as set forth on Exhibit 4 attached hereto, it is agreed and understood by the parties hereto that [Boyle] has not assumed and will not assume, discharge or be liable for any debts, obligations, liabilities or agreement of [RAL] ... incurred either

before, at, or after the closing ..., and [Boyle] shall not assume, pay, perform, or discharge any such debts, liabilities, obligations or agreements." The lease between RAL and Edwards was not included in the list of contracts assumed pursuant to the purchase and sale agreement.

Similarly, by its plain terms, the acknowledgement of obligations did not require Minato and Boyle to indemnify RAL for amounts owed under the lease with Edwards. To the contrary, this agreement stated only that as between Boyle and Minato, Boyle's liability under the purchase and sale agreement "shall be primary" and that to enforce its rights under the agreement, RAL "shall be entitled to look to Boyle for the performance of the obligations of Minato" without first commencing an action against Minato. The acknowledgement of obligations is silent as to any right that RAL might have to indemnification for amounts owed under the lease with Edwards.

For all of the above reasons, therefore, we conclude that the trial court erred by imposing upon Minato and Boyle a duty to indemnify RAL for amounts owed under the lease with Edwards. In light of this decision, we decline to address the remaining arguments of Minato and Boyle. Although Minato and Boyle assert that the trial court's order on the merits was barred by res judicata and/or collateral estoppel, this issue is now moot. Also moot is whether the trial court erred by enforcing paragraph two of the assignment agreement despite RAL's alleged failure to comply with a condition precedent. Moreover, as we have ruled that Minato and Boyle have no obligation to indemnify RAL for amounts due under the lease, they lack standing to raise their remaining arguments, which concern the trial court's award of damages to Edwards. *Cf. Silver Brothers, Inc. v. Wallin*, 122 N.H. 1138, 1140 (1982).

*Reversed and remanded.*

DUGGAN and HICKS, JJ., concurred.