10-2830-cv (L)
Best v. MetTel

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 23rd day of November, two thousand eleven.

Present:     JOSEPH M. McLAUGHLIN,
             ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
                      *Circuit Judges.*

---

In re: BEST PAYPHONES, INC.,

                              *Debtor.*

---

BEST PAYPHONES, INC.,

                              *Appellant*,

                                              10-2830-cv (Lead)
             -v.-                             10-3044-cv (Con)

MANHATTAN TELECOMMUNICATIONS CORPORATION,

                              *Appellee*.

---

Appearing for Appellant:     David Bolton, David Bolton, P.C., Garden City, N.Y.; George M. Gilmer, Law Office of George M. Gilmer, Brooklyn, N.Y.

Appearing for Appellee:      Fran M. Jacobs, Duane Morris LLP, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Gardephe, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of said District Court be and they hereby are **AFFIRMED**.

Appellant Best Payphones, Inc. ("Best") appeals the judgment of the district court affirming the bankruptcy court's decision that appellee Manhattan Telecommunications Corporation ("MetTel") held an allowed claim for lost profits of $238,082.43.

While Best's appeal was pending before the district court, Best filed a letter ("Pre-motion Letter") stating its intention to move for sanctions against MetTel's counsel under 28 U.S.C. § 1927. The district court concluded that Best's proposed motion would be meritless. Best separately appeals that decision.

Best, a payphone operator, contracted with North American Telecommunications Corporation ("Natelco"), a competitive local exchange carrier ("CLEC"), to obtain dial tone service for Best's payphones. In 2001, in the course of Natelco's Chapter 11 bankruptcy proceedings, Natelco assigned this contract ("Natelco Contract") to MetTel.[1] MetTel's lost profits claim, at issue in this appeal, arises out of Best's alleged breach of the Natelco Contract.

We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Best presses two main arguments in appealing the bankruptcy court's decision that it was liable to MetTel for breaching the Natelco Contract: first, that the bankruptcy court erred in concluding that MetTel had not unequivocally repudiated the contract; and, second, that the bankruptcy court erred in holding that the Asset Purchase Agreement between MetTel and Natelco had effectively assigned rights under the Natelco Contract to MetTel at the time of Best's alleged breach. With respect to the calculation of MetTel's lost profits, Best disputes the bankruptcy court's inclusion of the Federal Communications Commission ("FCC") line charge.

"On appeal from the district court's review of a bankruptcy court decision, we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law *de novo*." *In re Baker*, 604 F.3d 727, 729 (2d Cir. 2010) (internal quotation marks omitted).

Regarding Best's first argument on appeal, we affirm the ruling of the bankruptcy court that the Disconnect Notice did not relieve Best of its obligation under the Natelco Contract to provide notice and an opportunity to cure any material breach prior to terminating the contract. Under New York law, "[o]nce it becomes clear that one party will not live up to the contract, the aggrieved party is relieved from the performance of futile acts, such as conditions precedent." *Allbrand Discount Liquors, Inc. v. Times Square Stores Corp.*, 399 N.Y.S.2d 700, 701 (N.Y. App. Div. 1977); *see also Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992); *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989). Thus, if notice and opportunity to cure would have been futile, Best was entitled to terminate the contract without providing notice.

---

[1]Best disputes the date and finality of the assignment, as discussed below.

Best argues that MetTel repudiated the Natelco Contract – and thus rendered notice and opportunity to cure futile – by conditioning its performance on an extra-contractual requirement: payment to MetTel of a judgment unrelated to the Natelco Contract. The bankruptcy court found that, while the Disconnect Notice did breach the contract, it did not rise to the level of an unequivocal repudiation such that notice would have been futile. Instead, the Disconnect Notice invited Best to call if it had questions about the bill, and it would have been possible for MetTel to cure the breach by issuing a corrected invoice.

Best argues that the Disconnect Notice alone constituted a repudiation releasing it from its obligation to provide notice and an opportunity to cure. But Best cannot overcome the general rule that a renunciation must "rise to the level of a clear and unqualified refusal to perform the entire contract" in order to be a repudiation. *Palazzetti Imp./Exp., Inc. v. Morson*, No. 98 civ. 722, 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001), *aff'd*, 54 F. App'x 698 (2d Cir. 2002) (summary order) (unpublished decision relied on by appellant).

In *Bausch & Lomb*, this Court rejected defendant Sonomed's attempt "to extricate itself from [a contractual] notice requirement . . . by arguing that the provision should be read to exclude repudiations," reasoning that a repudiation is a form of "material breach." 977 F.2d at 727. We distinguished cases from other jurisdictions, where courts held that repudiations excused compliance with notice and cure provisions, because "[i]n each case, the repudiating party expressly disavowed any further duties under the contract at issue, in effect declaring the contract at an end." *Id.* at 728. Under the reasoning of *Bausch & Lomb*, the decisive issue was not whether there was a repudiation, but whether there was a repudiation that rendered notice *futile*.

Best is correct that repudiation occurs when a "party has attempted to avoid its obligations by advancing an 'untenable' interpretation of the contract, or has communicated its intent to perform only upon the satisfaction of extra-contractual conditions." *SPI Commc'ns v. WTZA-TV Assocs. Ltd. P'ship*, 644 N.Y.S.2d 788, 790 (N.Y. App. Div. 1996). Under New York law, repudiation of a contract is generally "a factual determination and heavily dependent upon a determination of whether a breaching party's words or deeds are unequivocal." *Fonda v. First Pioneer Farm Credit, ACA*, 927 N.Y.S.2d 417, 419 (N.Y. App. Div. 2011) (internal brackets and quotation marks omitted). If, however, the alleged repudiation is in writing, the court may resolve the repudiation issue as a matter of law, but *only* if the written expression is not ambiguous as to its meaning. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010). Here, the alleged repudiation – the Disconnect Notice – was in writing. Because it explicitly invited questions about the bill, however, it was ambiguous as to whether it unequivocally demanded payment of the judgment in exchange for performance under the contract. Best's argument that the invitation of questions in the Disconnect Notice unambiguously excluded questions about the unrelated judgment because it used the word "bill" defies common sense and relies on cases involving contract interpretation. Rules of contract interpretation, however, are inappropriate for interpreting the Disconnect Notice, as it was not the product of careful negotiation and there is no evidence it was ever meant to be subjected to a textual analysis.

Since the Disconnect Notice was ambiguous, whether it constituted an anticipatory repudiation is a question of fact that we review only for clear error. Citing to the trial transcript,

3

the bankruptcy court found that "MetTel could have . . . issued a new Notice of Disconnection linked to the payment of $82,122.93." It therefore concluded that, "[s]ince MetTel was entitled to send a Notice of Disconnection anyway, and could have cured its breach within the cure period, notice was not futile." This finding was not clearly erroneous.

Best argues in the alternative that even if it breached the Natelco Contract, it is not liable to MetTel because MetTel had no rights under the Natelco Contract at the time of the breach. The breach took place after the Natelco bankruptcy court's oral approval of the Asset Purchase Agreement between MetTel and Natelco but before its entry of the formal written order ("Sale Order"). Best presses three arguments attacking the effectiveness of the assignment of the Natelco Contract to MetTel: 1) the Best bankruptcy court erred in concluding that the Natelco bankruptcy court orally approved the assignment at the April 25 hearing; 2) paragraph eight of the Sale Order made the assignment conditional upon MetTel's compliance with applicable FCC and New York Public Service Commission ("PSC") regulations, with which MetTel did not comply; and 3) regardless of whether the Sale Order was conditional, FCC and New York law independently required Best's consent to the assignment. These arguments are not persuasive.

First, the Best bankruptcy court did not clearly err in finding that the Natelco bankruptcy court orally approved the assumption and assignment on April 25, 2001. Although there is some ambiguity in the record as to whether there was in fact an oral order on April 25 authorizing the assignment of the Natelco Contract to MetTel, there is sufficient evidence supporting the bankruptcy court's finding. There is contemporaneous evidence that the parties believed the Natelco bankruptcy court had approved the agreement. In addition, during the April 25 hearing, the Natelco court approved requests to "so order" the record and to waive the stay provided for by Rule 6006(d) of the Federal Rules of Bankruptcy Procedure. Rule 6006(d) provides that an order authorizing assumption and assignment is stayed fourteen days unless the court orders otherwise. If the court had not approved of the asset transfer, there would have been no reason to grant that stay.

Second, the Best bankruptcy court correctly rejected Best's argument that the Sale Order made the effectiveness of the assignment conditional upon MetTel's compliance with telecommunications regulations. "The interpretation of the text of a court order or judgment is considered a conclusion of law subject to *de novo* review." *United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005). In interpreting a court order, we construe it like "other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *Id.* at 424. We generally construe a court decree or judgment "with reference to the issues it was meant to decide," and "a court is presumed not to intend to grant relief which was not demanded." *Id.* (internal quotation marks omitted). Finally, as with construction of other written documents, "where . . . an ambiguity in terminology results in a lack of clarity as to the scope of the ruling, a reviewing court may properly examine the entire record for the purpose of determining what was decided." *Id.* (internal quotation marks omitted).

While Best is correct that paragraph eight of the Sale Order required the parties to fulfill any applicable regulatory requirements, the Sale Order did not expressly condition the effectiveness of the assignment on compliance with those requirements. Moreover, it does not follow from the record, given the circumstances, that the court conditioned the effectiveness of the transfer on the fulfillment of those requirements. Other provisions of the Sale Order, cited by

4

MetTel, support this view. *See, e.g.*, Sale Order ¶16 (providing that the contract "shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with [its] respective terms, excluding and notwithstanding any provision in such Contract . . . that prohibits, restricts or conditions such assignment or transfer to the Purchaser"). In addition, even if MetTel had been required to obtain Best's consent under the Sale Order, it is not clear that its failure to do so would necessarily have rendered the assumption and assignment void.

As to Best's third argument, that the assignment was void because FCC and New York regulations required MetTel to obtain Best's consent to the transfer, the bankruptcy court correctly rejected this argument. By conceding to the Natelco bankruptcy court that the Natelco Contract was an executory contract and thus freely assignable, Best waived any consent-based objection to its assignability. Moreover, MetTel obtained an order from the FCC that *waived* any applicable consent requirement and approved notification letters stating that any option to switch service providers was subject to the individual service contract. Further, Best had agreed in the Natelco Contract that Natelco could assign its contractual rights to any party it approved as an assignee. Even if MetTel did not comply with all applicable regulatory requirements, the Best bankruptcy court was correct that any failure to comply would not have given Best the right to terminate the Natelco Contract unilaterally.

Indeed, although Best is correct that the New York PSC Rule requires "compli[ance] with authorization and confirmation procedures established by the commission and by federal law and rules," N.Y. Pub. Serv. § 92-e(2), it does not provide contract termination as a remedy; rather, the penalty for a violation is a forfeiture of money to the state of New York. *See id.* §§ 25, 92-e(6). Thus, even if MetTel was required to obtain Best's consent to the transfer notwithstanding the FCC waiver, Best has not shown that MetTel's failure to do so prevented assignment or somehow permitted Best's unilateral termination.

Best argues that the bankruptcy court erred in including the FCC line charge of $8.08 in its damages calculation. The bankruptcy court included that amount, in part, based on testimony presented by MetTel that as a matter of industry practice, carriers keep the FCC line charge amount. Best did not submit evidence that CLECs like MetTel cannot collect line charges, and instead relies on an FCC regulation, 47 C.F.R. § 69.104(a), which explicitly "is applicable only to incumbent local exchange carriers." Best also argues, under New York law, that "unless the specific tariff pursuant to which MetTel claimed entitlement to payment was produced and the basis for the charge identified, MetTel failed in its burden of showing that it was entitled to include the $62,312.96 as part of its lost profit damages." MetTel presented testimony that the charges were believed to be authorized by tariff and that all local exchange carriers invoice and retain the line charge rather than forwarding it to another carrier, and the bankruptcy court did not clearly err in crediting this evidence.

Best has filed a separate appeal (no. 10-3044), in which it argues that the district court abused its discretion by refusing to entertain Best's proposed motion for sanctions under 28 U.S.C. § 1927 against MetTel. Best argues that Judge Gardephe's order effectively prevented Best from moving for sanctions, which, as a matter of law, he did not have the power to do.

We review a district court's denial of a motion for sanctions under an abuse-of-discretion standard. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997). "A district court

5

'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision-though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnote omitted).

Under Section 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Award of sanctions under Section 1927 requires a "clear showing of bad faith," and "is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (internal quotation marks omitted). The purpose of the statute was "to deter unnecessary delays in litigation." H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad. News, 2716, 2782, *quoted in Oliveri*, 803 F.3d at 1273.

Under this standard, Best's proposed motion lacked merit. In its Pre-motion Letter, Best argued that MetTel's statements were irreconcilable or inconsistent with the record. In fact, the claims and arguments to which Best objected were supported by the record, accepted by the bankruptcy court, and ultimately accepted by the district court.

Regardless of the merits of the proposed motion, Best is correct that a district court "has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987). In *Richardson*, we found that the district judge erred when she effectively prevented the Laus from filing a motion for leave to amend their answer. We have noted that "[f]iling at the trial court level with a view to 'making a record' is crucial because, absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." *IBM v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). "Moreover, it is of no avail to an appellant that the trial court itself may have prevented him from including a particular item in the trial record; the appellate court will not speculate about the proceedings below, but will rely only upon the record actually made." *Id.*

Here, however, the district court did not explicitly deny the request for a pre-motion conference. Rather, the court appears to have construed the Pre-Motion Letter as the motion itself, concluding: "[Best's counsel] cannot supplement the arguments in Best's briefs in the guise of a motion for sanctions filed fifteen months after briefing on Best's appeal closed. In any event, there is no basis for granting sanctions here under 28 U.S.C. § 1927." In this Circuit, district judges have, in some cases, construed pre-motion letters as the motions themselves and denied the motions. *See, e.g.*, *Manus Sports Gloves, LLC v. Everlast Worldwide, Inc.*, 759 F. Supp. 2d 459, 459-60 (S.D.N.Y. 2010) (construing letter request for pre-motion conference as a motion for partial judgment on the pleadings and denying the motion); *Abdell v. City of New York*, No. 05 civ. 8453, 2006 WL 2620927, at *1 (S.D.N.Y. Sept. 12, 2006) (construing request for pre-motion conference as motion to amend and denying the motion).

Although the Pre-Motion Letter requested a pre-motion conference, and was styled as a

6

letter rather than as a motion, the letter consisted of seven single-spaced pages laying out several claimed "irreconcilable or clearly inconsistent statements made by Appellee's counsel." The letter concluded, "Therefore . . . Best should be awarded sanctions under Section 1927." MetTel filed a response of four single-spaced pages, responding to the merits of Best's sanctions argument and attaching two exhibits, and Best filed a letter in reply.

Given the length and detail of the Pre-motion Letter and responses, and the clear lack of merit of the sanctions argument, the district court did not abuse its discretion in construing the letter as a motion and denying the motion. While a court may not deny a party the opportunity to file even a frivolous motion, Best had the opportunity to make the arguments necessary to preserve its sanctions motion for appellate review, and Best has not pointed to any additional argument it would have made had it filed full motion papers.

We have received letters from both parties pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, and nothing therein has changed our view of the case. Accordingly, the judgments of the district court hereby are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7