FILED

JUL 16 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. AZ-12-1626-JuTaAh |
| | ) | |
| RCS CAPITAL DEVELOPMENT, LLC; | ) | Bk. No. 11-28746-RJH |
| AMERICAN CHILDCARE PROPERTIES, | ) | (jointly administered with |
| LLC; ACCP I, LLC, | ) | 11-29741-RJH, 11-29742-RJH) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| A.B.C. LEARNING CENTRES LTD.; | ) | |
| ABC DEVELOPMENTAL LEARNING | ) | |
| CENTERS (USA), INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | M E M O R A N D U M* |
| v. | ) | |
| | ) | |
| RCS CAPITAL DEVELOPMENT, LLC; | ) | |
| AMERICAN CHILDCARE PROPERTIES, | ) | |
| LLC; ACCP I, LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 16, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Randolph J. Haines, Chief Bankruptcy Judge, Presiding
_____

Appearances:     Carson T.H. Emmons Esq., of Baird, Williams &
                 Greer, LLP, argued for Appellees RCS Capital
                 Development, LLC, American Childcare Properties,

_____

    * This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

-1-

LLC and ACCP I, LLC.[**]
_____

Before:  JURY, TAYLOR, and AHART[***], Bankruptcy Judges.

Appellants, A.B.C. Learning Centres Limited (ABC Learning) and its affiliate, ABC Developmental Learning Centers (U.S.A.), Inc. (ABC USA) (collectively, ABC) appeal from the bankruptcy court's order confirming the Fifth Amended Chapter 11[1] Plan dated October 22, 2012, filed by RCS Capital Development, LLC (RCS), American Childcare Properties, LLC (ACCP), and ACCP I, LLC (collectively, RCS, ACCP and ACCP I, LLC are referred to as Debtors).  We AFFIRM.

## I.  FACTS

This appeal follows from our decision in the related appeal involving the same parties (BAP No. AZ-12-1381-JuTaAh).  There, we affirmed the bankruptcy court's orders: (1) granting RCS's motion for summary judgment (MSJ) and, thus, allowing RCS to set off its $57 million judgment adverse to ABC against ABC's $41 million proof of claim based on litigation pending against Debtors and others; and (2) denying ABC's cross MSJ which

_____

[**] John J. Fries and Joshua L. Kahn of Ryley Carlock & Applewhite and Andrew Rosenblatt and Eric Daucher of Chadbourne & Parke LLP appeared on brief for Appellants A.B.C. Learning Centres Ltd. and ABC Developmental Learning Centers (USA), Inc. Appellants chose not to appear at argument in accordance with the Panel's June 11, 2013 order.

[***] Hon. Alan M. Ahart, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

asserted legal and equitable defenses to the setoff. Since we stated the facts leading up to the bankruptcy court's decisions on the setoff issue in our memorandum in the related appeal, we will not repeat them here other than to amplify them as may be appropriate to this appeal.

**A.  RCS's Request for Relief From Stay in ABC's Chapter 15**

After the bankruptcy court entered the order granting RCS's MSJ on the setoff issue and quashing all lis pendens which ABC recorded against RCS properties, RCS filed a motion in the Delaware bankruptcy court seeking to vacate the orders: (1) imposing the automatic stay in ABC's chapter 15 case; and (2) finding that RCS had willfully violated the automatic stay. On September 20, 2012, the Delaware bankruptcy court denied RCS's motion as premature because the order granting RCS's MSJ remained subject to reconsideration and appeal.

**B.  Confirmation of Debtors' Chapter 11 Plan**

Debtors then proceeded toward confirmation of their plan,[2] which proposed, as allowed by the MSJ order, to pay ABC's claim in full through setoff and to pay other unsecured creditors in full through cash on hand and post-confirmation collections. In particular, the funding for the plan would come from: (1) cash on hand ($56,000); (2) proceeds from the Ann Road Property (as described below); (3) proceeds from the distributions to RCS from its participation in the development of the Russell Road

---

[2] The plan was a "joint" plan proposed by RCS, ACCP, and ACCP I, LLC. The bankruptcy court approved the Disclosure Statement by order dated June 21, 2012.

Property;[3] and (4) pursuing collection of the USD$28,486,206.64, plus interest, owed by ABC to RCS as a result of the setoff.

The plan designated five classes of claims:

Class 1 - City of North Las Vegas Secured Claim: The City of North Las Vegas had a lien for unpaid property taxes and development fees against the property known as the Ann Road Property. RCS proposed to sell this property under § 363 and use the proceeds to pay the City with the remainder used to pay other allowed unsecured claims (other than ABC) under the plan.[4]

Class 2 - Hill Crest Bank Secured Claim: RCS owned two parcels known as the Valley View and Simmons properties which were encumbered by liens in favor of Hill Crest Bank. Because the loans were nonrecourse and the value of the properties was less than the liens, RCS would surrender those properties to Hill Crest Bank.

Class 3(A) - General Unsecured Claims (other than ABC and Ken Krynski): These claims would be paid in full with (1) excess proceeds from the Ann Road Property; (2) through RCS' 50% profit participation in the Russell Road Property; and (3) any monies RCS collected from ABC. RCS anticipated that the claims

---

[3] RCS owned a 50% profit interest in property located at 2488 East Russell Road. Once the Russell Road Property was sold, Debtors would use RCS's share of the proceeds (approximately $800,000-$1,000,000) to pay off general unsecured claims, except the debt owed to ABC. The Russell Road Property was in escrow prior to confirmation of Debtors' plan with a scheduled closing in December 2012.

[4] On July 9, 2012, RCS moved for authorization to sell the Ann Road Property for $500,000. On July 27, 2012, RCS filed an amended motion to sell the property. ABC objected to the motion due to the automatic stay imposed in its chapter 15 proceeding. However, ABC consented to the sale if the proceeds were held in a segregated account and not distributed until ABC's interest in the Ann Road Property was determined by a final and non-appealable order. On August 20, 2012, the bankruptcy overruled ABC's objection and allowed the property to be sold by order entered on August 24, 2012 without the conditions consented to by ABC. The proceeds were used to pay off the City of North Las Vegas, and the remaining proceeds were designated for unsecured creditors other than ABC.

-4-

in this class would be no greater than $925,000.

Class 3(B) - ABC Claims:  RCS proposed to pay ABC the full amount of its claim with its setoff, which allowed for 100% payment.

Class 3(C) - Ken Krynski Claim:  RCS disputed Krynski's claim filed in the amount of $2 million. RCS believed that the claim was no more than $500,000. RCS would make payments to Krynski on the Effective Date in an amount determined by the court necessary to cure any default(s) on the payment plan due Krynski pursuant to the settlement agreement dated August 15, 2011.  Any payments made after the Effective Date would be made in accordance with the settlement agreement.

Administrative Claims:  All amounts would be paid in full within thirty (30) days of confirmation subject to allowance by the bankruptcy court.

Class 5 - Interests of Members:  No distributions would be made to members until after payments to all other creditors.

Finally, the plan provided for mutual releases in connection with ABC's claim and for substantive consolidation of Debtors' estates.

On August 14, 2012, ABC objected to the confirmation of Debtors' plan on several grounds.[5]  First, citing Sherman v. Harbin (In re Harbin), 486 F.3d 510, 517 (9th Cir. 2007), ABC argued that the plan did not meet the feasibility requirement under § 1129(a)(11) because it made no provision for the possibility that ABC would prevail on appeal of the RCS MSJ order and, thereafter, obtain a judgment against Debtors that was not subject to setoff.  Second, ABC asserted that the plan provided for property sales that were "forbidden by law" in

---

[5] The Official Committee of Unsecured Creditors and Krynski also objected to the plan.  However, those objections were either resolved or withdrawn.

violation of § 1129(a)(3). ABC maintained that the automatic stay in its chapter 15 case, coupled with the Delaware bankruptcy court's enforcement of the stay against RCS through various orders, prohibited the property sales called for by the plan.[6]

The bankruptcy court heard the matter on October 10, 2012 and overruled ABC's objections, except for those related to the purported violations of § 1129(a)(3) (forbidden by law) and § 1129(a)(11) (feasibility). These objections were continued for an evidentiary hearing on November 13, 2012.

On October 22, 2012, Debtors submitted the Fifth Amendment to Plan of Reorganization. The plan was amended as result of the hearing on October 10, 2012.

At the November 13, 2012, evidentiary hearing, Debtors' sole witness was Rick Sodja, a member of RCS. ABC produced no witnesses. After hearing Sodja's testimony and the parties' arguments, the bankruptcy court overruled ABC's remaining objections and confirmed the plan. The bankruptcy court found that the sale of the properties did not run afoul of the automatic stay imposed in ABC's chapter 15 case nor violate the Delaware bankruptcy court's orders which enforced the stay against RCS with respect to the properties. The court reasoned

---

[6] ABC made numerous other objections that are not relevant for purposes of this appeal. For example, ABC objected to the plan provision which made its claims against Debtors subject to a mutual release; asserted that the plan falsely classified its claim as unimpaired; accused Debtors of gerrymandering because the plan classified ABC separately from other unsecured claims; and argued that the plan improperly called for the substantive consolidation of Debtors' estates.

that neither of the orders made any determination with respect to ABC's rights or interests in the properties. Since the RCS bankruptcy court had determined ABC had no rights or interests in the properties, the court found that the plan complied with § 1129(a)(3).

Next, the bankruptcy court addressed ABC's feasibility objection based on the holding in Harbin. The court explained that the holding in Harbin simply required the court, rather than the plan, to consider what might happen on appeal and that requirement was among all the facts and circumstances the court needs to consider in determining feasibility. The court concluded that based on the evidence presented, the plan was not likely to need any further liquidation or financial reorganization for two reasons: First, the court did not think that ABC was going to prevail on appeal. Second, even if ABC did prevail, the court found no evidence that suggested after a trial on the merits that ABC's claim would not be subject to setoff or that it was likely ABC would wind up with a net claim so large that Debtors would have to liquidate or engage in further financial reorganization. The bankruptcy court concluded that Debtors presented a "good case" that further liquidation or financial reorganization was not likely. For these reasons, the court found that Debtors met their burden of proof on feasibility under § 1129(a)(11).[7] The bankruptcy court

---

[7] At this hearing, the bankruptcy court also ruled that the mutual release provision should be deleted, substantive consolidation was inappropriate, and that the plan was proposed in good faith.

-7-

entered the order confirming the plan on November 29, 2012.

On December 4, 2012, ABC filed a timely notice of appeal from the confirmation order. On the same day, ABC filed an emergency motion for a stay pending appeal and an emergency motion for an expedited hearing on the motion. At the December 11, 2012 expedited hearing on the matter, the bankruptcy court denied ABC's motion for stay pending appeal.

On December 17, 2012, Debtors filed a Notice of Effective Date which stated that the Effective Date of the confirmed plan was December 14, 2012. In the notice, Debtors represented that payments were made to Krynski in the amount of $535,000 and that other payments were being made pursuant to the confirmed plan of reorganization.

After the bankruptcy court denied ABC's motion for a stay pending appeal, ABC filed a motion for a stay of the confirmation order with the Panel. On December 21, 2012, the Panel entered an order staying distributions under the plan pending resolution of this appeal. RCS moved for reconsideration. After reviewing the bankruptcy court's reasons for denying a stay, the Panel concluded that the lack of likelihood of success on the merits justified revisiting its original order granting the requested stay. The Panel granted RCS's motion for reconsideration and vacated the stay by order entered on February 2, 2013.

## II. JURISDICTION

Because the plan has been confirmed, distributions commenced, properties sold, and there is no stay pending appeal of the confirmation order, the question arises whether this

-8-

appeal is moot and subject to dismissal. If an appeal is moot, we must dismiss if constitutionally moot, Drummond v. Urban (In re Urban), 375 B.R. 882, 887 (9th Cir. BAP 2007), and we may dismiss if equitably moot. Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33-35 (9th Cir. BAP 2008). We consider the mootness question below and conclude that the appeal is not constitutionally or equitably moot.

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.  Whether ABC's appeal from the bankruptcy court's order confirming Debtors' chapter 11 plan is moot;

B.  Whether the bankruptcy court erred in finding that Debtors' plan was not forbidden by law and complied with § 1129(a)(3); and

C.  Whether the bankruptcy court erred in finding that Debtors' plan satisfied the feasibility requirements under § 1129(a)(11).

## IV.  STANDARDS OF REVIEW

"Mootness is a question of law reviewed de novo." Nelson v. George Wong Pension Trust (In re Nelson), 391 B.R. 437, 442 (9th Cir. BAP 2008).

The issue of whether the plan was proposed "by any means forbidden by law" is a question of law which we also review de novo. Settling States v. Carolina Tobacco Co. (In re Carolina Tobacco Co.), 360 B.R. 702, 711 (D. Or. 2007). In connection with our inquiry into whether Debtors' plan was proposed "by any

-9-

means forbidden by law," we are called upon to interpret the stay enforcement orders issued by the Delaware bankruptcy court. The interpretation of a court order is a legal conclusion to be reviewed de novo.  See U.S. v. Spallone, 399 F.3d 415, 423 (2d Cir. 2005) ("The interpretation of the text of [another court's] order or judgment is considered a conclusion of law subject to de novo review.").

"The issue whether a plan is feasible-is not likely to be followed by liquidation or further reorganization-is one of fact, which we review under the clearly erroneous standard." In re Harbin, 486 F.3d at 517.  We affirm the bankruptcy court's factual findings unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'"  United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). Where there are two plausible views of the evidence, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

## V.  DISCUSSION

### A.  Mootness

Both RCS and ABC address the mootness issue in their briefs, albeit in an abbreviated manner.  On the one hand, ABC contends that this appeal is not moot because the Panel granted ABC's request for a stay pending appeal.  However that order has since been vacated.  On the other hand, without legal analysis or support, RCS suggests that this appeal would become moot once we affirmed the bankruptcy court's summary judgment order in the

related appeal, BAP No. AZ-12-1381-JuTaAh. Although we have affirmed the bankruptcy court's orders on the cross motions for summary judgment on the setoff issue, we disagree that our decision rendered this appeal moot.[8]

We have an independent obligation to consider mootness sua sponte, <u>Felton Pilate v. Burrell (In re Burrell)</u>, 415 F.3d 994, 997 (9th Cir. 2005), because we lack jurisdiction, <u>Urban</u>, 375 B.R. at 887, or it may be the case that any remedy may be unjust given the change in position of third parties, <u>Clear Channel</u>, 391 B.R. at 33-35. "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decide the matter on the merits in his favor. If it can grant such relief, the matter is not moot." <u>In re Burrell</u>, 415 F.3d at 998. We conclude that this appeal is not constitutionally moot because we could reverse plan confirmation or require modification of the plan, thereby giving relief to ABC.

The equitable mootness question requires more analysis due to the Ninth Circuit's "comprehensive test" for determining whether an appeal is equitably moot:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for

---

[8] We also must acknowledge that our ruling may not be the final order on that issue, as ABC has further appeal rights.

-11-

the bankruptcy court. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 881 (9th Cir. 2012). In applying these factors to this case, we ultimately decline to dismiss this appeal on equitable mootness grounds.

First, ABC was diligent in seeking a stay from the bankruptcy court and this Panel, which both refused. "[F]ailure to obtain a stay is one factor to be considered in assessing equitable mootness, but is not necessarily controlling." Id. at 881-82. Second, because a stay was sought and not gained, we next determine whether substantial consummation of the plan has occurred. "The Bankruptcy Code defines substantial consummation as: (a) transfer of all or substantially all of the property proposed by the plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (c) commencement of distribution under the plan." Id. (citing § 1101(2)).

RCS states that it no longer has any property that was subject to the lis pendens as the properties have all been sold and most of the proceeds have been used to pay RCS's creditors. Sodja's testimony at the evidentiary hearing on plan confirmation corroborates RCS's statement. As noted above, the Ann Road Property was sold over ABC's objection pursuant to a court order prior to the confirmation of Debtors' plan. Sodja testified that two of the properties RCS owned would be returned to Hill Crest Bank because the debt exceeded the potential value of the properties. Finally, Sodja testified that the closing

-12-

for the Russell Road Property was to occur prior to the end of the year [2012]. Hence, the first requirement for substantial consummation has been met because there has been a transfer of all the real property dealt with by the plan.

Paragraph 7.1 of the plan provides that, as of the Effective Date, the management, control, and operation of the Reorganized Debtor[s] became the general responsibility of the Managing Member of the Reorganized Debtor[s], "which shall, thereafter have the responsibility for the management, control and operation of the Reorganized Debtor[s]." Therefore, the second requirement for substantial consummation of the plan has been met.

Finally, distributions under the plan have commenced. The Notice of Effective Date filed by Debtors plainly states that Krynski was paid $525,000 and other distributions had commenced. Accordingly, the plan has been substantially consummated.

Even though the plan has been substantially consummated, that is not the "end of the story." In re Thorpe Insulation Co., 677 F.3d at 882 n.7. We can "still assess whether effective relief might be given without fully impairing the prior plan and other pertinent circumstances." Id. We, thus, consider "whether modification of the plan of reorganization would bear unduly on the innocent." Id. at 882.

There is no doubt that the plan has proceeded and third party rights have intervened. Properties were sold to third parties who are not presently before the court. Under these circumstances, it would be inequitable to alter the plan so far as the sale of the properties is concerned because parties who

-13-

relied on the plan are not before us.

We last consider whether the bankruptcy court on remand may be able to devise an equitable remedy. "Where equitable relief, though incomplete, is available, the appeal is not moot." Id. at 883. Here, RCS's remaining asset is its judgment against ABC. Therefore, complete reversal of the plan will not likely provide a remedy for ABC. However, RCS admits that some residual amount remains in its estate. Moreover, if ABC's claims are determined to be valid, then it may be entitled to recover monies RCS paid to Krynski, who was the sole member of ACCP, which had obtained the loans from ABC. While theoretically Krynski may not have the money, we conclude this possibility does not make this appeal equitably moot. We therefore consider the merits.

**B.   The Merits**

Debtors had the burden of proving all the elements governing plan confirmation. Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 940 (9th Cir. BAP 1997), aff'd, 171 F.3d 1219 (9th Cir. 1999). The requirements for plan confirmation are listed in § 1129(a) (stating that the court shall confirm a plan only if all the following requirements have been met). Sections 1129(a)(3) and (11) are at issue in this appeal.

**Section 1129(a)(3): Forbidden by Law**

Section 1129(a)(3) requires the bankruptcy court to decide whether the "plan has been proposed in good faith and not by any means forbidden by law." ABC contends that Debtors' plan runs afoul of this section because properties will be sold that are subject to stay enforcement orders issued by the Delaware

-14-

bankruptcy court. ABC argues that these orders, which enforced the automatic stay in ABC's chapter 15 case against RCS, demonstrate that ABC has a protectable interest in the properties. Thus, according to ABC, the confirmation order authorizing the sale of the properties constitutes an impermissible collateral attack on the Delaware bankruptcy court's orders.

In the first order ABC relies upon, the Delaware bankruptcy court found that RCS's sale of properties subject to ABC's lis pendens was a willful violation of the automatic stay.[9] ABC's argument that this order somehow prohibited the sale of the properties through the confirmed plan stems from a faulty premise; i.e., that the Delaware bankruptcy court's enforcement of the stay against RCS means that the court found ABC had a constructive trust over the properties, creating a right to the protection of the stay. The order does not say that.

"Court orders are construed like other written instruments, except that the determining factor is not the intent of parties,

_____

[9] Recall that ABC recorded the lis pendens against the ACCP properties concurrent with the commencement of the Nevada lawsuit against Debtors and others. RCS filed a motion to expunge the lis pendens which the Nevada court denied in an order dated September 10, 2009, finding: (1) the constructive trust claim affected the title or possession of the properties; (2) ABC Learning would be injured by a transfer of an interest in the properties before the Nevada Action was concluded; and (3) ABC Learning established that it was likely to prevail on the merits of the constructive trust claim. See In re ABC Learning Centres Ltd., 2011 WL 4899789, at *2 (setting forth what happened in the Nevada court). After the Nevada district court denied RCS's motion to expunge, RCS sold three properties that were subject to the lis pendens. Id.

but that of the issuing court." Spallone, 399 F.3d at 424. "[A]n order will not be construed as going beyond the motion in pursuance of which the order was made, for a court is presumed not to intend to grant relief which was not demanded." Id. The plain language of the order shows that the Delaware bankruptcy court found RCS violated the stay based on its inquiry into whether ABC had "arguable claims of right to the properties, or a colorable basis for asserting an interest in the properties." In re ABC Learning Centres Ltd., 2011 WL 4899789, at *2. The court's order further shows that ABC's filing of the lis pendens established the colorable claim: "Filing the Lis Pendens and the Nevada Court's Lis Pendens Order established a colorable claim of title." Id. Finally, the Delaware bankruptcy court did not find that ABC had rights to the properties by virtue of its constructive trust claim. "It is not necessary at this stage that [ABC] establish an ownership interest in or title to the property and the bankruptcy court need not make that determination at the outset for the automatic stay to apply. The Nevada Court will make that determination . . . If the Nevada court finds that [ABC] had a constructive trust, that will vest title of rights in [ABC]." Id. at *3.

We do not construe the Arizona bankruptcy court's confirmation order as a collateral attack on this order. "The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts." Rein v. Providian Fin. Corp., 270 F.3d 895, 902 (9th Cir. 2001). In order to be an impermissible collateral attack of an earlier judgment, the relevant claims must have been directly ruled on in the prior

-16-

proceeding. See Skokomish Indian Tribe v. United States, 332 F.3d 551, 560 (9th Cir. 2003). Here, although the Delaware bankruptcy court enforced the automatic stay against RCS, the basis for its doing so was the filing of the lis pendens. The order does not establish that ABC had any other colorable basis for asserting an interest in the properties. As noted by the bankruptcy court, no court has ever ruled on ABC's constructive trust claim. Accordingly, the collateral attack doctrine does not apply.

It follows that once the Arizona bankruptcy court quashed the lis pendens due to its findings that there was a de facto merger between RCS and ACCP, the sale of the properties through a confirmed plan could not run afoul of the Delaware bankruptcy court's order, or for that matter, the imposition of the stay in ABC's chapter 15.

The second order ABC relies upon is the Delaware bankruptcy court's denial of RCS's motion to vacate the order imposing the stay in ABC's chapter 15 and the order finding RCS had committed a willful violation of the stay even though the Delaware court knew that the Arizona bankruptcy court had granted RCS's MSJ and quashed the lis pendens on the properties. The plan also does not violate the law because of this denial order. Again, the plain language of the order only refers to the now-dissolved lis pendens as the colorable basis for ABC's alleged interest in the properties. In sum, we conclude that the bankruptcy court did not err by finding that Debtors' plan complied with § 1129(a)(3).

-17-

**Section 1129(a)(11): Feasibility**

Section 1129(a)(11) requires the court to confirm a plan when "[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

ABC argues that the bankruptcy court erred in its finding of feasibility because it did not follow a bright-line rule set forth in Harbin, which ABC recites as follows: a plan is not feasible if it does not provide a mechanism for addressing the claims of creditors who may subsequently recover large judgments against the debtor. However, this is neither a rule nor the holding set forth in Harbin. The opinion begins: "[W]e hold that a bankruptcy court considering the feasibility of a plan of reorganization under 11 U.S.C. § 1129(a)(11) must evaluate the possible effect of a debtor's ongoing civil case with a potential creditor, whether that litigation is pending at the trial level or on appeal." In re Harbin, 486 F.3d at 514. Nowhere do we find in the opinion a "bright-line" rule that requires a plan to provide a mechanism for addressing the claims of creditors who may subsequently recover large judgments against the debtor.

Moreover, in Harbin the bankruptcy court erroneously concluded that it could not consider the effect of the creditor's pending appeal for several reasons, including the Rooker-Feldman doctrine. All these reasons were rejected by the Ninth Circuit. This case differs. The bankruptcy court

-18-

properly noted, "what might happen on appeal is among the facts and circumstances the court needs to consider in determining feasibility." The court then considered the effect of ABC's appeal on the feasibility of Debtors' plan by taking evidence on whether ABC would prevail in the appeal of the RCS MSJ order, but "it heard no evidence to that effect."

Because feasibility is a finding of fact, ABC has the burden to demonstrate that the bankruptcy court's findings of fact are clearly erroneous. Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC), 465 B.R. 525, 545 (9th Cir. BAP 2012). To show clear error, ABC must demonstrate how the findings were not supported by the record (i.e., the testimony and evidence upon which the court relied in issuing its ruling). ABC contends that it does not need to show clear error because the bankruptcy court misapplied the law when it found ABC was unlikely to prevail in the summary judgment appeal. In addition, ABC argues that the RCS MSJ will be reviewed de novo on appeal. Therefore, ABC maintains that the bankruptcy court's decision that it was "unlikely to prevail on appeal" should be governed under a de novo review standard. We now have affirmed the bankruptcy court's orders on the parties' cross motions for summary judgment. Therefore, even under a de novo review, ABC has not shown that it was likely to prevail on appeal.

In short, ABC failed to show a reasonable possibility that its claim could affect the plan's feasibility in the future; i.e., that the plan was likely to be followed by liquidation, or the need for further financial reorganization. Accordingly, we discern no error with the bankruptcy court's conclusion that the

-19-

plan met the requirements for feasibility under § 1129(a)(11).[10]

## VI.   CONCLUSION

For the reasons stated, we AFFIRM.

---

[10] ABC devotes a significant portion of its brief to arguments raised and briefed in the related appeal on the cross summary judgment motions.  We do not revisit these arguments in the context of this appeal.